444 So.2d 783 (1984)
Charles W. STRECKER d/b/a Orleans Cabinet Works
v.
CREDICO FINANCIAL, INC.
No. CA-0945.
Court of Appeal of Louisiana, Fourth Circuit.
January 13, 1984.
*784 Alan H. Katz, Gordon, Arata, McCollam & Stuart, New Orleans, for plaintiff-appellee.
Irving B. Shnaider, New Orleans, for defendant-appellant.
Before SCHOTT, BARRY and WARD, JJ.
BARRY, Judge.
This litigation involves a claim for payment for office furniture allegedly custom manufactured by plaintiff at defendant's request. Plaintiff was awarded $3,704.22 which represents the contract price minus the amount plaintiff received when the furniture was sold to another buyer. Defendant claims the trial court erred by finding an oral contract, challenges the award, and questions whether plaintiff adequately mitigated his damages.

FACTS
Plaintiff Charles Strecker, proprietor of Orleans Cabinet Works, has manufactured *785 and installed custom-made store and office furniture for forty years. Defendant Credico Financial, Inc. operates loan offices in Mississippi and Louisiana. Plaintiff had done business with Credico and its predecessor for 35 years, involving over 90 jobs where plaintiff designed the office layout and manufactured and installed counters, desks, enclosures and other furniture. None of those transactions were by written contract. The only written documentation of each job was a schematic floor plan by plaintiff based on measurements and specifications from Credico. After the plans were approved, plaintiff made the furniture and billed Credico on a cost plus profit price.
Plaintiff was contacted by Don McBrayer, Credico's area vice president, in late 1979 or early 1980 and told that Credico was planning to enlarge its Vicksburg, Mississippi office and wanted him to design the layout. Plaintiff met with McBrayer and his superior, John Falgoust, at Credico's main office in New Orleans and was given measurements for the expanded office. McBrayer and Falgoust maintain they told plaintiff of their efforts to finalize a lease for more space and wanted to minimize the delay in setting up operations. Both men admitted asking plaintiff to propose a suggested layout or alternative layouts for the Vicksburg office.
A few days later, plaintiff returned to Credico's office with at least one, and possibly several, proposed layouts. Falgoust thought they had discussed alternative floor plans but could only recall seeing one layout and did not remember the substance of the second meeting. McBrayer said plaintiff gave him a floor plan but the meeting "ended with the understanding to hold off, that we don't have anything firmed...." Plaintiff testified the plan was approved at the second meeting.
Plaintiff also testified that McBrayer went to his shop a few days later and told him that Credico needed the furniture in one month. Plaintiff said his wife and several employees were present and he identified a notation made by his wife on the back of the floor plan, which said, "Allstate Credit Plan, one month."[1] Neither plaintiff's wife nor any of his employees testified. McBrayer said he went to plaintiff's shop on an unrelated matter and the Vicksburg furniture wasn't mentioned.
Plaintiff testified the furniture was finished within two weeks after McBrayer's visit, but when he contacted Credico concerning delivery he was told, "hold up on it." Thereafter he or his wife called Credico about once a month, and were told they were still working on the new lease and would notify plaintiff when the furniture was required. Plaintiff claims he was never told by Credico that it didn't want the furniture, but after storing it in his warehouse for two years he sold the furniture to E-Z TV Rental for $600.00.
Neither Falgoust nor McBrayer remembered any calls from plaintiff concerning delivery of the furniture until at least January, 1981. Both men said they were unaware plaintiff had built the furniture until shortly before suit was filed. Credico claims the telephone numbers for McBrayer which appear on plaintiff's layout were not operative until McBrayer began working out of its Gulfport, Mississippi office in October, 1980, several months after plaintiff said he made the furniture and notified defendant. Plaintiff explained his wife made several calls to Credico's New Orleans office requesting delivery information and was eventually given the Gulfport numbers after being "put off" for months.
EXISTENCE OF AN ORAL CONTRACT
Credico's first four assignments of error challenge the sufficiency of the evidence to support the finding of an oral contract. Specifically, Credico argues the trial court erred by finding consent to a contract because its managers denied giving such consent and there was no action from which consent could be inferred. The question of consent is an issue of fact, not of law. Credico's witnesses, McBrayer and *786 Falgoust, were directly contradicted by plaintiff who said McBrayer specifically instructed him to build the furniture within one month. Contrary to Credico's assertion, the lower court did not "infer consent" solely from its actions or inaction; rather, the trial judge chose to believe plaintiff's direct testimony as opposed to that of Credico's employees.
Credico further contends it was error to accept plaintiff's unsubstantiated testimony when LSA-C.C. Art. 2277 requires the existence of a contract in excess of $500 be proven by "at least one credible witness, and other corroborating circumstances." Credico acknowledges a litigant may qualify as the "one credible witness." Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977); B.M. Albrecht Electric, Inc. v. Griffin, 413 So.2d 246 (La.App. 4th Cir.1982); Aydell v. Fontaine Abbott Constn. Co., 274 So.2d 484 (La.App. 1st Cir.1973). Our jurisprudence also holds that corroboration need not be "independent proof of every detail of the witness's testimony," but may be "general corroboration." Samuels v. Firestone Tire & Rubber Co., supra, at 662. The existence of corroborating circumstances is a question of fact and a trial court's findings thereon are entitled to great weight. Samuels, supra; Aydell v. Fontaine Abbott Constn. Co., supra; O'Rourke v. Tracy, 375 So.2d 747 (La.App. 4th Cir.1979). Nevertheless, defendant contends there was absolutely no corroborating evidence from which the trial court could have found the existence of an oral contract.
In his Reasons the trial judge declared:
THIS COURT finds that the testimony of plaintiff, Charles W. Strecker, was not only believable but is rational and logical. It is incredible to think that after performing more than ninety (90) contracts based on oral agreements, that plaintiff would have proceeded to build the furniture shown in plaintiff's exhibit no. 1, without an affirmative indication by defendant to proceed. The evidence is supportive and this Court believes that the defendant found that it no longer needed the furniture or that it was no longer feasible to take delivery of the furniture, and defendant repudiated the contract after the plaintiff was ready, willing and able to deliver defendant's order;
The evidence when taken as a whole is clear that there was a valid oral contract between plaintiff and defendant to build the cabinets shown in plaintiff's exhibit no. 1, which is enforceable in our Courts. (Citations too numerous to list.)
This Court was especially impressed by the testimony of Messrs. John R. Falgout [sic] and Don McBriere [sic] who attempted to convince this Court that the defendant "never ordered any furniture", or that there "was no contract to build the furniture". This too is incredible! However, their testimony when carefully weighed by the circumstances of this case, is corroborative of the plaintiff's claim.
A similar fact situation occurred in Aydell, supra. There the plaintiff operated a millwork and cabinet making business, bid on a job, and claimed the general contractor told him the job was his. In reliance, plaintiff placed special orders for custommade doors. Two defense witnesses testified plaintiff had not been awarded the job. The trial court accepted plaintiff's version of the matter and found an oral contract. As in this case on appeal, the defendant in Aydell contended there were no "corroborating circumstances." The First Circuit rejected defendant's argument, stating:
In the case at bar the doors ordered by plaintiffs were of a custom type made especially for the particular jobs involved and plaintiff would not have ordered them if indeed there had been no oral contract. We find that this is an additional corroborating circumstance evidencing the alleged oral contract between plaintiff and defendant.
Similarly, in Jolley Elevator Co. v. Schwegmann Bros. Giant Super Markets, 230 So.2d 640 (La.App. 4th Cir.) writ denied 255 La. 813, 233 So.2d 251 (1970), this Court held the plaintiff's actions in ordering materials for the installation of an elevator *787 were "corroborating circumstances" which sufficiently supported plaintiff's testimony to prove an oral contract.
In this case the trial judge found, and we agree, that plaintiff's actions in ordering the materials and building the furniture were corroborating circumstances. That corroboration, coupled with plaintiff's testimony, meets the requirements of C.C. Art. 2277 to support the existence of an oral contract.
Defendant's brief contains statements indicating the contract was one of sale, apparently arguing that no contract could exist because a specific price had not been negotiated. However, our jurisprudence shows this was a contract to perform (to do) rather than one to sell. E.G. Duhon v. Three Friends Homebuilders Corp., 396 So.2d 559 (La.App. 3d Cir.1981); Kegler's, Inc. v. Levy, 239 So.2d 450 (La. App. 4th Cir.1970). In such a contract, it may be presumed that price will be determined in a reasonable manner. Here the price was determined as it had been in the previous ninety-six jobs performed by plaintiff for defendant.
THE REFUSAL TO ALLOW EVIDENCE CONCERNING THE AUTHORITY OF CREDICO'S OFFICERS TO BIND CREDICO
Credico complains the trial court erred by not allowing testimony on its corporate procedures for approving contracts in order to show McBrayer lacked authority to order the furniture. The trial judge refused the testimony because Credico did not plead the affirmative defense of lack of capacity. Defense counsel was allowed a proffer but none was made.
Articles 1151 and 1154 of our Code of Civil Procedure allow the trial judge to deny an amendment to an answer and to deny the introduction of irrelevant evidence. The trial judge has discretion and his ruling will not be disturbed except where abuse of discretion is manifest and indicates a possibility of resulting injustice. James v. Missouri Pacific Railroad Co., 113 So.2d 41 (La.App.2d Cir.1959).
Plaintiff was not aware until mid-trial that Credico intended to assert lack of agency as a defense. Trial had previously been set twice and before each setting plaintiff's and Credico's counsel had conferred but there was no mention of that defense. No discovery was taken.
The record supports denial of the agency testimony. Plaintiff had performed ninety-six jobs for Credico. Although Credico's managers changed over the years, plaintiff always dealt with persons at the level of McBrayer and Falgoust in New Orleans, and those persons possessed apparent authority to bind defendant.
McBrayer and Falgoust testified that neither they nor anyone else had ever told plaintiff that authority to purchase furniture had to be obtained from Credico's headquarters in New Jersey. The trial judge correctly disallowed the testimony. Further, we are satisfied the agency defense is without substance.

QUANTUM
Credico contends the award is "in an amount which was not substantiated or corroborated in any way." Plaintiff testified his price was based on "costs plus profit" as in all prior contracts with Credico. He explained the $4,304.22 represents labor and materials plus 30% profit. Credico had never questioned his many past computations and offered no evidence that plaintiff's costs were wrong or unreasonable. The trial court properly accepted plaintiff's testimony in setting the contract price.
Credico also asserts plaintiff failed to mitigate his damages because he waited two years to sell the furniture and then for only $600. Credico relies on the principle that, where a seller can avoid a loss "by reselling the item on the open market at the time of the original delivery, the seller may not recover damages from the buyer," citing Mutual Rice Co. of La. v. Star Bottling Works, Ltd., 111 So. 661 (1927). Credico also urges that a seller must minimize *788 his loss by reselling the goods as soon as practicable after the buyer rejects them and must secure the best price obtainable. Cyrus W. Scott Mfg. Co. v. Stoma, 10 La.App. 469, 121 So. 335 (2d Cir.1929) and Belle Alliance v. International Molasses Co., 8 Orl.App. 176 (1911).
However, as noted above, this was not a contract of sale. Moreover, plaintiff testified he was never advised by any representative of Credico that it did not plan to accept the furniture; rather, he was consistently told to wait for further notification. Credico's witnesses said they did not refuse delivery of the furniture until shortly before plaintiff filed suit. Plaintiff testified he sold the furniture shortly after the suit. Thus, there was no undue delay in plaintiff's efforts to mitigate the damages.
Credico further claims the $600 price paid by E-Z TV Rental was unreasonable because of the $4,304.22 value. We note the uncontradicted evidence that the furniture was custom designed for Credico's office in Vicksburg. Plaintiff testified the counter was 18 feet longthe largest plaintiff builtand would not be suitable for other offices without alterations. Plaintiff said he stored furniture in his warehouse for other finance companies and similar used furniture sold for about $300.
Salvador Cousins, manager of E-Z TV Rental, testified he approached plaintiff about buying the Credico furniture because he was told plaintiff had a long counter and other pieces. He stated he previously bought an 18 foot counter and three desks for $300 or $400. Cousins said he told plaintiff that E-Z TV wouldn't pay more than $400 or $500 for the Credico furniture, but plaintiff charged $600 and Cousins agreed.
The trial court lauded plaintiff's attempt to minimize his damage, saying:
The Court heard uncontested testimony that the plaintiff sold the furniture and/or fixtures for Six Hundred and no/100, ($600.00), dollars. This Court believes that this was not unreasonable. As a matter of fact, this Court is impressed that plaintiff was honestly attempting to mitigate his damages without realizing that the jurisprudence in Louisiana required this action by plaintiff;...
We agree that plaintiff adequately and timely mitigated his damages.
The district court judgment is affirmed at appellant's costs.
AFFIRMED.
NOTES
[1] Allstate was the predecessor of Credico.