FRED W. JONES, Jr., Judge.
These consolidated tort actions arose out of an electrical accident that injured one man severely and killed his son. Northeast Louisiana Power Cooperative, Inc. (Co-op) was sued by the injured man and the wife and children of the decedent for alleged negligence in the maintenance of the pow-erline that caused the injuries. A jury found no negligence chargeable to the Coop and judgment was rendered accordingly. Plaintiffs appealed. We affirm for the following reasons.
The powerline in question runs along the north side of Highway 80 east of Rayville. It is a 13.8KW uninsulated distribution line that was positioned approximately 27 feet above the ground. The line was installed in 1956 when the area was rural. At the time of installation and at the time of the accident the National Electric Safety Code minimum height for such a line was 20.75 feet.
The accident occurred at the business of Thomas and Chowns Steel Construction Company (T & C) which fronts 136 feet on Highway 80. T & C's gravel driveway runs from Highway 80 underneath the Coop’s powerline approximately 88 feet to a building. The northernmost powerline measures 27.25 feet above the driveway.
T & C’s business is the installation of prefabricated steel canopies over gas pumps. The manufacturer sells the canopies and ships them to T & C to be installed. A shipment may consist of anywhere from one to five separate jobs. When a shipment arrives, it is unloaded by a specially built pickup truck that includes a 20 foot boom mounted 8 feet 4 inches above the ground on a jack-up table. The boom is used for lifting the heavy steel parts. The parts are placed alongside the gravel driveway starting nearest to the building and then progressing toward the highway. The parts are stored along the driveway until they are loaded onto the truck to go to the jobsite. A job may be as far away as Florida or Kentucky.
In May of 1982, T & C had two installation teams: Chowns and his helper, and Raymond Thomas and his helper, his son, Patrick Dale Thomas. On May 24, 1982, the latter team was loading a job to go to Hattiesburg, Mississippi. The last shipment from the manufacturer had been a particularly large one, so the parts stretched all the way along the driveway *1056 up to the powerlines. The loading went uneventfully until the final pallet was retrieved from near the power lines. Raymond Thomas operated the boom and Patrick Thomas steadied the pallet. As the boom was raised to allow the pallet to be placed on the truck, the boom came into close proximity to the powerline, causing the truck to be energized. Patrick Thomas was killed and Raymond Thomas was severely injured.
Plaintiffs argue that the omission of certain jury charges constitutes reversible error. Secondly, they assert the jury was clearly wrong in failing to find that the defendant was negligent.
We have reviewed the requested jury charges and the detailed charges given to the jury by the trial judge. The law the plaintiffs complain was lacking from the jury charge was the proper weight to be given to the National Electric Safety Code. The trial judge charged:
“The National Electric Safety Code has been referred to in this case, and these are standards and rules recognized in the ... industry which have been accepted as such. However, they are not law and do not have the force and effect of law. When power lines are built in accordance with accepted safety standards in the industry, which includes building the lines at a certain minimum height above the ground, that is known as, or called, ‘Insulation by Isolation.’ That is, the line is high enough above the ground that it is not reasonable to foresee that any injury should result from the lines. However, circumstances may change with the changing environment in the area of the lines, such as building constructions and other types of works above ground which may bring persons in closer proximity to the line and expose them to greater danger. In such cases, and under such circumstances, if the utility company has knowledge of these changed conditions, or if it reasonably should have known or seen, then its duty to protect those persons in the vicinity increases, and it cannot under those circumstances merely rely on the previously taken protective measures such as insulation by isolation.”.
The only possible omission the plaintiffs can complain of is the failure to charge that a violation of the Code in location, care and maintenance would be negligence. However, because the parties stipulated that the lines exceeded code standards and because the charge makes it clear that there is a continuing duty to protect the public in light of changed conditions, we find no error by the trial court in these jury charges.
The second issue is whether defendant was negligent in the maintenance of the lines. Plaintiffs argue that the lines were built in 1956 in a rural area and should have been made safer as the use of the land changed. It is undisputed that defendant knew of the change in land use; the question is whether the Co-op knew of dangerous activity under the wires.
The Louisiana Supreme Court explained the applicable negligence standard in the case of Kent v. Gulf States Utilities Co., 418 So.2d 493, 497 (La.1982):
“In a typical negligence case against the owner of a thing (such as a tree) which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in the damage, that the owner knew or- should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing.”
The lineman who read T & C’s meter said that he seldom saw any activity in the yard. This is consistent with the testimony of the owners that they were often at faraway jobsites for extended periods of time. The lineman testified that the yard was full of prefabricated steel running from the building toward the highway, but that the majority of it was well away from the wires. Most importantly, the lineman stated that he had never seen the boom in use an unsafe distance from the lines. We *1057 cannot say that he should have surmised from the nature of the business that they would run into the wires with the boom. We note that the wires were 27 feet high and the boom when fully extended was just over 28 feet. Without having seen the boom in close proximity to the wires, it is unlikely that the lineman would have even known the boom could touch the wires.
Plaintiffs argue that the business next door had three powerline accidents which should have alerted the Co-op to the danger. While at first blush this seems convincing, we note that two of the three accidents were on the insulated service line running to the building and the third was on the low neutral line. Furthermore, the business next door apparently used different equipment and had a higher activity level. We cannot say that the unique situation next door was notice of any danger at T & C.
Plaintiffs cite the case of Hebert v. Gulf States Utilities, 426 So.2d 111 (La.1983), where the utility company was found to be negligent. There the Supreme Court concluded that the close proximity of uninsulated powerlines to a metal building under construction was unreasonably dangerous. Furthermore, it was found that the utility company knew of the danger because it had de-energized the lines after a crane had struck the lines on the same project. The utility re-energized the lines after work with the crane had been completed.
The case before us is distinguishable in several important respects. First, the workman in Hebert who was injured was working on a fixed structure within a fixed distance of the utility lines. He had no alternative but to work there or quit. In our case the truck and boom could be moved and often were moved as the loading operation progressed. The utility company did not have notice of their dangerous proximity to the lines, nor should they have. Secondly, in Hebert the worker was not in a position to approach the electric company. Thomas and his son certainly could have contacted the utility company if they felt a hazard existed. Thirdly, in Hebert there had been an accident earlier on the same job. In this case, T & C had been accident-free for approximately three years.
We therefore hold that the jury was not clearly wrong in finding an absence of negligence on the part of the Co-op.
Even applying strict liability to the case before us does not change the result since this line did not create an unreasonable risk of harm. In other words, we do not find that the powerline was defective. In the case of Horton v. Valley Elec. Membership Corp., 461 So.2d 375 (La.App. 2d Cir.1984), the wires were clearly defective, having fallen to within ten feet of the ground.
For the foregoing reasons, we affirm the judgment of the trial court, with costs of appeal assessed to the appellants.