482 So.2d 869 (1986)
Milton Wayne PRICE, Plaintiff-Appellant,
v.
MITCHELL CONSTRUCTION COMPANY, INC., et al., Defendants-Appellees.
No. 17427-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1986.
Writ Denied March 21, 1986.
*870 Kirkpatrick, Keyser & Kirkpatrick by Gary L. Keyser, Baton Rouge, and Schober & Brabham by John L. Schober, Jr., Shreveport, for plaintiff-appellant.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for defendants-appellees Robert Mitchell, III, Scott Oliphint and Zurich Ins. Co.
Wilkinson, Carmody & Gilliam by Arthur R. Carmody, Jr. and Bobby S. Gilliam, Shreveport, for defendant-appellee Southwestern Elec. Power Co.
Before JASPER E. JONES, FRED W. JONES, Jr. and NORRIS, JJ.
FRED W. JONES, Jr., Judge.
Milton W. Price, ironworker for Mitchell Construction Company, Inc., was injured as the result of receiving an electrical shock during the course of an on-the-job accident. Price filed a tort action against Mitchell and Oliphint, executive officers of his corporate employer; Zurich Insurance Company ("Zurich"), their liability insurance carrier; and Southwestern Electric Power Company ("SWEPCO").
The trial was bifurcated, with the issues of liability and quantum taken up separately. On the first issue the defendants were found liable to the plaintiff, who was determined to be free of contributory negligence. With reference to quantum, Price was awarded $75,000 in general damages; $2,789 in lost wages; $6,414.48 in medical expenses; and $3,000 for future medical expenses.
Zurich, which also carried the worker's compensation insurance for plaintiff's employer and had paid Price benefits thereunder, as an intervenor in the suit to recover sums paid, was awarded $23,926.33 out of the judgment in favor of plaintiff.
*871 All parties to the action appealed. Plaintiff asks for a substantial increase in his award and contends that the judgment in favor of the intervenor, Zurich, is incorrect because it ordered reimbursement of sums plaintiff did not receive in his judgment. Defendants contest the issue of liability.
For the reasons hereinafter explained we reduce the award of the trial court to the intervenor, Zurich, but otherwise affirm the judgment.
Factual Context
On March 29, 1974 Price was engaged in his employment as an ironworker for Mitchell Construction Company, Inc. in the construction of a large (over 200 feet long) metal building on Greenwood Road in Shreveport. His duties included carrying sheets of roofing steel, measuring about three feet wide and from 20 to 30 feet long, from a site on top of the building where the sheets were stacked to the west edge of the roof where the sheets were to be installed. A series of electrical lines belonging to SWEPCO ran along the western edge of the building under construction. The lines had been installed the year before when a mini-storage building was constructed on the adjacent lot. They ran 7.9 feet from the west side of the building on which Price was working and were 3.4 feet above the top of that structure.
As Price and a co-worker were in the process of carrying one of the sheets of steel for placement, it came into such proximity to the SWEPCO lines that Price received an electrical shock, causing the injuries for which he has sued.
Liability
Electric transmission companies which maintain high power lines are required to exercise the utmost care to reduce hazards to life as far as practicable. However, an electric utility is not required to guard against situations which cannot reasonably be expected or contemplated. Hebert v. Gulf States Utilities Co., 426 So.2d 111 (La.1983).
Consequently, critical to the issue of liability is whether, under the circumstances of this particular case, the defendants should have foreseen the likelihood of the accident which occurred. In Simon v. Southwest La. Elec. Membership Corp., 390 So.2d 1265 (La.1980), the court found that the defendant had done everything reasonably expected to avoid an accident. Its lines were 11.7 feet higher than required by the governing Code and it had no notice of the drilling activity which gave rise to the accident.
We held in Thomas v. Northeast La. Power Co-op., Inc., 469 So.2d 1054 (La. App.2d Cir.1985) that a utility company was not liable for injuries sustained when a loading crane touched a live power line which ran 27 feet above the ground (Code required only 20.75 feet) and there was no prior knowledge of activity near the wire.
A different result was reached in Hebert, supra. There, in a situation quite similar to the case at bar, the plaintiff was engaged in moving pieces of metal 20 feet in length when he inadvertently touched a power line positioned 26 feet 4 inches above the ground, with a horizontal and vertical clearance of 3.45 feet and 9.5 feet respectively from the nearest part of the building under construction. The defendant contended that the lines were insulated by isolation, because they were not readily accessible to the public. In response, the court stated:
"... the risk is different for one assigned to work fifteen feet above the ground and atop a structure which is within ten or eleven feet of the power line, than for ground level workers who must use extraordinary means to contact the overhead electrical lines."
The court concluded that the defendant utility company owed the plaintiff a duty to protect him from the risk of harm from electrocution and it breached that duty.
In this case it was shown that a temporary electrical service connection for the building under construction was made in November 1973. It was SWEPCO's policy to have an engineering employee investigate the application in order to determine the future needs of the applicant. Further, *872 a SWEPCO employee read the meter on temporary service connections monthly, just as with meters of regular customers. Therefore, SWEPCO either knew or should have known of circumstances surrounding the construction on this large steel building, including knowledge of the limited clearance from the roof of the building to the existing SWEPCO electric lines. Concluding that because of their proximity these power lines posed a danger to workmen handling sheets of steel on top of the structure, and determining that SWEPCO knew or should have known of this danger, we find that SWEPCO should have foreseen the likelihood of the occurrence of this accident and taken steps to protect plaintiff by either de-energizing the lines or guarding them with some type of temporary rubber insulation. By failing to do so, SWEPCO breached its duty to plaintiff and was correctly held liable for his injuries.
A logical corollary to this determination is the conclusion that Mitchell and Oliphint, as executive officers of plaintiff's corporate employer, were also liable for his injuries because of their failure to provide him a safe place to conduct his work.
The contention that plaintiff was contributorily negligent is without merit. Plaintiff did not breach a duty to himself by failing to avoid the unreasonable risk created by the action of others. See Blakeney v. Tidewater, 463 So.2d 914 (La.App.2d Cir.1985).
Quantum
The trial court found that plaintiff suffered, as the result of his on-the-job accident, damage to his urethra which will require continuing treatment; an ulcer; a burn injury to his hands and one foot causing the loss of a little toe; and a small residual disability to the muscles in the left leg. Plaintiff's claim that he also sustained brain damage with resulting permanent disability was rejected. Plaintiff argues that the trial judge erred in this finding and that, consequently, his damage award should be substantially increased.
A claimant bears the burden of proving both the existence of injuries and the causal connection between them and the accident. He must do this by a preponderance of the evidencea mere possibility is not sufficient. Coco v. Richland General Contractors, Inc., 411 So.2d 1260 (La. App. 3rd Cir.1982).
There seemed to be general agreement among the medical experts that, at the time of the trial, plaintiff had a serious organic brain disorder together with a severe personality disorder manifested by extreme rage toward those with whom he became involved. Disagreement existed among the medical experts as to whether these conditions resulted from the on-the-job accident.
Plaintiff presented the testimony of two psychiatrists who were of the opinion that his brain damage and personality disorder were caused by the electrical shock. On the other hand, a Shreveport psychologist testifying on behalf of defendants stated that plaintiff was diagnosed as an epileptic, with organic brain damage, in 1972, well before this accident.
Furthermore, it appears that defendants effectively refuted plaintiff's claim that his brain damage was caused by a lack of oxygen due to a cardiac arrest following the accident. Dr. Johnson, who happened to be in the area at the time of the accident, testified that he observed plaintiff lying on the ground. Examination revealed neither a pulse nor sign of breathing. The physician gave plaintiff a blow to the chest and could then detect a heart beat. There was no evidence of blue lips nor of bluish color around the fingernails, prime indicators of cardiac arrest.
In addition, medical authorities explained that electricity takes the path of least resistance through the body. Consequently, when the electricity entered plaintiff's body at his hands, it flowed directly to his feet (where he was grounded), and never passed through his head.
Finally, Dr. Hendler, a well qualified psychiatrist, analyzed plaintiff's medical records and social history and concluded *873 that the on-the-job accident contributed in no way to his brain damage and personality disorder.
In view of this substantial evidence supporting the trial judge's fact-finding that plaintiff's brain damage and personality disorder were not caused by the accident in question, he was not clearly wrong in this conclusion and did not abuse his discretion in the damage award.
We note, parenthetically, that plaintiff complains of the trial court's refusal to permit him to amend his petition during trial to ask for increased damages. A trial judge has broad discretion under La.C.C.P. Articles 1154 and 1155 to either deny or permit amendments and supplements to pleadings once trial has started. His rulings will not be disturbed unless abuse of that discretion is manifest. Strecker v. Credico Financial, Inc., 444 So.2d 783 (La. App. 4th Cir.1984). We find no abuse of discretion in this case.
Award to Intervenor, Zurich
In his judgment the trial judge ordered that the intervenor worker's compensation carrier be reimbursed by plaintiff, out of his award, the sum of $23,926.33, apparently based upon the following sums paid by Zurich:

$10,335.00 159 weeks of compensation at $65 per
 week
5,091.33 medical expenses paid
8,500.00 lump sum settlement of claim

On the other hand, in the trial court's award plaintiff only received $2,789.00 for lost wages and $5,091.33 for medical expenses, or a total of $8,880.33. Consequently, he was ordered to reimburse Zurich $15,046.00 more than he received for the items listed.
Confronted by a similar situation, the court in Fontenot v. Hanover Insurance Company, 385 So.2d 238, 240 (La.1980) stated:
"The underlying policy of the apportionment scheme in providing that an employer's claim for reimbursement of compensation paid shall take precedence is merely that the employee should not be compensated doubly for the same element of his damages, [citation omitted]. It does not appear that the legislature intended for the employer to be reimbursed from his employee's award for items which the employee has not recovered from the third person."
Following this rationale, plaintiff is correct in his contention that the award to Zurich should not exceed the specific amounts awarded to plaintiff for the items in question. Therefore, we will reduce the award to Zurich from $23,926.33 to $8,880.33.
Decree
For the reasons set forth, we amend the district court judgment to reduce the amount ordered reimbursed to Zurich Insurance Company, as intervenor, by plaintiff, from $23,926.33 to $8,880.33, and as amended, the judgment is affirmed.
Cost of this appeal is assessed as follows: one-third to plaintiff Price; one-third to defendant SWEPCO; one-third to Mitchell, Oliphint and their insurance company, Zurich.