514 So.2d 7 (1987)
Edward BROOKS, Jr.
v.
A.J. CHICOLA, et al.
No. 87-C-0752.
Supreme Court of Louisiana.
October 19, 1987.
George Flournoy, Fuhrer, Flournoy Hunter & Morton, Alexandria, for applicant.
Steven Crews, Watson, Murchison, Crews, Arthur & Corkern, Natchitoches, for respondent.
COLE, Justice.
The issue presented in this case is whether La.R.S. 23:1103 allows an employer or compensation insurer, intervening in an injured employee's third party suit, to recoup compensation benefits paid and receive credit for future compensation from sums awarded the employee for damages other than past and future loss of earnings.
Edward Brooks, Jr., a part-time employee of Natchitoches Warehouse and Compress, Inc. (Natchitoches) was injured when a bale of cotton fell from a truck onto his back. The truck was owned by John Guillot. The bale was dropped by Ronald N. *8 Chicola, an independent truck driver, as he attempted to place the bale on a forklift.
Brooks received worker's compensation benefits from Fireman's Fund Insurance Company (Fireman's), the compensation insurer of Natchitoches. Brooks then filed suit against Chicola.[1] Natchitoches and Fireman's intervened for reimbursement of weekly benefits and medical expenses pursuant to R.S. 23:1102. The parties made several stipulations at trial. They agreed Brooks was injured in the course and scope of his employment and the medical expenses would be added onto the jury's total award. They further agreed Fireman's paid Brooks $26,724.00 in weekly disability benefits and $13,249.42 in medical expenses and that the question of lost earnings would be submitted to the jury, while reserving to the trial judge the issue of reimbursement of compensation benefits due the intervenors.
Chicola was found to be 90% at fault; a Natchitoches foreman to be 10% at fault. Damages were awarded as follows:

Past physical pain and suffering_______ $ 7,000.00
Future physical pain and suffering_____ 30,000.00
Past mental anguish____________________ 5,000.00
Future mental anguish__________________ 2,500.00
Past loss of earnings__________________ 15,000.00
Future loss of earnings________________ 65,000.00

The jury awarded a total of $124,500.00 to Brooks. Because of the seasonal nature of his work, Brooks had, prior to his injury, earned a yearly salary of only $5,000.00. Based on this figure, the jury awarded Brooks $15,000.00 for three years of lost wages. The trial court ruled Fireman's was entitled to $28,249.42. This award was comprised of $13,249.42 for medical expenses and $15,000.00 for weekly compensation benefits, which was equivalent to the jury's award for past lost earnings.
The trial judge further limited Fireman's credit for future compensation to the $65,000.00 awarded for future loss of earnings.
Fireman's and Natchitoches appealed. A five judge panel of the court of appeal, with two members dissenting in part, amended the trial court's judgment and awarded Fireman's $39,973.42. This award encompassed the full amount for medical expenses, $13,249.42, and the full amount of weekly benefits paid, $26,724.00. The court also held the credit for future weekly compensation benefits was subject to the entire balance of the jury's award. The net effect of the appellate court ruling was to reduce the plaintiff's award for pain and suffering in order to reimburse the compensation insurer. The court reasoned that reimbursement may reach the tort award for pain and suffering because weekly compensation benefits are paid, in part, in lieu of recovery for pain and suffering and not limited to recovery of lost wages.
We disagree with the holding of the court of appeal, reverse its decision, and reinstate the trial court's judgment. We conclude a worker's weekly compensation benefits are paid only in lieu of his lost wages and his lost earning capacity,[2] during periods of disability resulting from job related accidents, not in lieu of his pain and suffering. Accordingly, we hold weekly benefits are wage replacement and, as such, reimbursement for benefits paid to the plaintiff in this case must be limited to the tort award for lost wages.

REIMBURSEMENT FOR WEEKLY COMPENSATION BENEFITS
La.R.S. 23:1103 provides that out of the damages awarded to the injured worker in an action against a third party tortfeasor, *9 an employer must be reimbursed in whole or in part for the compensation benefits he has actually paid.[3] The intervenors argue they are entitled to be reimbursed not only out of the damages awarded to the tort claimant for lost wages, but also out of the sum awarded for pain and suffering.[4] Their argument stems largely from the peculiar facts of this case and the way in which weekly benefits are computed under the Worker's Compensation Law.
In the usual compensation situation, an employee with year-round employment will receive two-thirds of his regular wages in weekly benefits. Later in a third party suit he may recover 100% of lost wages, reimbursing the compensation insurer or employer for the two-thirds already paid, and keeping the remaining one-third as the balance of his lost wages. However, in this case plaintiff, a part-time seasonal worker, was injured at the most productive time of his work year, thus entitling him to weekly benefits which exceeded his yearly earnings.
Intervenors contend under these circumstances weekly benefits are paid both in lieu of lost wages and pain and suffering. The court of appeal adopted this position relying in part on Malone and Johnson's Civil Law Treatise on Workers' Compensation, quoting:
When the employer or insurer does intervene, however, it is proper to assure that weekly benefits paid are reimbursed in the judgment out of the award to the employee for `pain and suffering,' wage loss, or out of `general damages ...'
W. Malone and A. Johnson, "Workers' Compensation Law and Practice," 14 La. Civil Law Treatise § 369, at 182-83 (2nd Ed.1980).
With all due respect to the authors of this learned treatise, we cannot accept this statement of law. Worker's Compensation weekly benefits are paid to a worker merely in lieu of his lost wages and lost earning capacity during periods of disability resulting from job related accidents.[5]
The intervenors' contention that compensation benefits include compensation both for lost wages and for such items of general damages as pain and suffering is at first glance a seemingly logical conclusion which is amply demonstrated by the facts of this case. Plaintiff, according to the jury, lost only $15,000.00 in wages for his 3 years of disability because he had been earning only $5,000.00 per year. The jury also awarded the plaintiff a sum for pain and suffering. Therefore, the intervenors assert, the $9,500.00 in yearly compensation benefits which they had been paying to the plaintiff must necessarily have included $4,500.00 *10 for pain and suffering. Intervenors argue this is the only reasonable interpretation to be given to the workman's compensation benefit.
As logical as this interpretation might appear at first glance, it is not the only reasonable interpretation of the Act. The intervenors' interpretation fails to account for the differences between compensation benefits as defined in the Louisiana Worker's Compensation Act and damages which are awarded in tort cases based on fault.
It is true that tort damages can include compensation both for lost wages and for pain and suffering. Worker's compensation benefits, however, are different because compensation benefits include compensation for lost wages and for lost capacity to earn wages, but not for pain and suffering. This will be shown more fully below. For now, we postulate if compensation benefits may be said to compensate not only for actual wages lost from the worker's present job, but also for the diminished capacity to earn wages, then it is possible to interpret the Act differently than do the intervenors and conclude the $4,500.00 per year is a benefit paid to compensate for lost capacity to earn wages rather than to compensate for plaintiff's pain and suffering.

THE ELEMENTS OF BENEFITS UNDER THE WORKER'S COMPENSATION LAW
The Louisiana Worker's Compensation Law provides compensation payments be made to the employee by the employer or the compensation insurer. See, e.g., La. R.S. 23:1201. Those payments include both medical expenses, La.R.S. 23:1203, and disability compensation which is paid weekly. La.R.S. 23:1221. The Act does not, however, state specifically the elements of loss for which the benefits are paid. That is, the Act itself does not specify whether weekly benefits are meant to substitute for lost wages, lost earning capacity, pain and suffering, or for other elements of damage. That question, then, must be answered by looking at the purposes of the Act and by looking at implications of the particular provisions of the Act.

(1) PREVIOUS CASE TREATMENT
Before analyzing the purposes and implications of the Act in order to determine whether weekly compensation benefits substitute in whole or in part for the tort element of pain and suffering, it is appropriate to review how the Louisiana courts have approached this question. The courts of appeal are in conflict. The second circuit has held the reimbursement award for weekly compensation benefits cannot exceed the amount a plaintiff is awarded for lost wages in his third party tort action. Price v. Mitchell Const. Co., Inc., 482 So.2d 869 (La.App.2d Cir.1986). The second circuit in Price refused to allow reimbursement out of the plaintiff's award for general damages. The third circuit, however, has expressly declined in this case to follow the second circuit's holding in Price. Brooks v. Chicola, 503 So.2d 1086, at 1089, fn. 2 (La.App.3d Cir.1987). The court held:
an intervenor [is] entitled to be reimbursed for weekly benefits it [has] paid to an injured employee out of any award to [the] employee whether for pain and suffering, lost wages, or general damages.

Id. at 1088 (citing Stewart v. Hanover Ins. Co., 416 So.2d 286 (La.App.3d Cir.), writ denied, 421 So.2d 907 (La.1982)).
The second circuit holding in Price was predicated upon the rationale set forth by this court in Fontenot v. Hanover Ins. Co., 385 So.2d 238 (La.1980).[6] In Fontenot this Court confronted the issue of whether an employer or his insurer is entitled to reimbursement for medical expenses paid under the Worker's Compensation Law out of the employee's judgment against a third party tortfeasor for his pain and suffering. Justice Dennis, writing for the majority, reasoned:

*11 The underlying policy of the apportionment scheme in providing that an employer's claim for reimbursement of compensation actually paid shall take precedence is merely that the employee should not be compensated doubly for the same element of his damages. [Citation omitted.] It does not appear that the legislature intended for the employer to be reimbursed from the employee's award for items which the employee has not recovered from the third person. [Citations omitted.] Id. at 240.
The third circuit distinguished Fontenot, as follows:
As we interpret Fontenot ... it is inapplicable to the case at bar. Fontenot stands for the proposition that an employee is not required to reimburse his employer for paid medical expenses out of his (employee's) award for pain and suffering when the employee has failed to recover medical expenses from a third party tortfeasor. The same is not true, however, for weekly benefits paid, which, are recoverable out of the award to the employee for pain and suffering, lost wages, or out of general damages ... In view of the above, we find no error on the part of the trial judge in granting intervenor judgment for compensation payments in excess of the amount awarded plaintiff for lost wages.

Stewart, supra, at 289 (citing Foreman v. United States Fidelity and Guaranty Co., 253 So.2d 580 (La.App.3d Cir.1971)).
It is true that in Fontenot the issue involved medical expenses and not weekly benefits. Unfortunately, neither the third circuit in this case nor the second circuit in Price explain satisfactorily why medical expense reimbursement should be treated either the same or differently from weekly benefits. The third circuit says "differently" because weekly benefits are, "in part at least, in lieu of recovery for pain and suffering." Brooks v. Chicola, supra, at 1089. The second circuit in Price found the weekly benefits are reimbursable from the specific amount awarded to plaintiff for the "item" of lost wages. The "item" of $75,000 in general damages was not encroached upon. Price, supra, at 873. The reasons for the respective conclusions are not fully indicated in either opinion.[7]
Finally, in the discussion of case treatment, we note Stewart's reliance on Foreman was inapposite because in Foreman the weekly benefits paid were $308.57, and the tort award for lost wages was $675.00. Thus, Foreman did not hold that reimbursement for weekly benefit payments could come out of the employee's award for pain and suffering.

(2) POLICY OF THE WORKER'S COMPENSATION LAW
Because the jurisprudence has not resolved the issue, we consider the purposes of the Act and analyze its provisions to resolve the question of whether weekly compensation benefits are, in part, in lieu of the tort element of pain and suffering. In light of specific provisions of the Worker's Compensation Law, it is abundantly clear that weekly benefits are intended merely as wage replacement. Further, we are convinced the primary purpose of the Worker's Compensation Law is to replace lost wages and to compensate for the lost capacity to earn wages, not to compensate for pain and suffering.
What is the broad policy behind the Worker's Compensation Law? In 1914 a Commission, chaired by Senator Walter J. Burke, reported to the Senate on the proposed new workmen's compensation legislation. La.Sen.Journal Reg.Sess. 33-44 (1914). The Commission reported that with the growth of modern industry the normal rules of tort liability for injuries were no longer viable in the workplace, where accidents are "inherent to occupations hazardous in their nature, and which occupations *12 are a necessity of the social and economic demands of the age." Id. at 35. The proposed compensation statute would replace the tort system (where the employer paid damages only when the accident was his fault) with a system of "compensation laws based, not upon the obligation of the individual employer, but rather upon the obligation of society to protect the [injured] employee...." Id. Instead of damages, the employee was to receive compensation for "loss of bodily faculty and regular wages." Id. Apparently the Commission did not contemplate benefits would compensate for pain and suffering, but only for lost capacity to earn wages ("bodily faculty") and lost wages. The idea was not that the employee recover his "damages" but rather that he be "protected" and given at least a large enough percentage of his former wages for his economic subsistence.
A similar interpretation of the purpose of the compensation statute was proffered by Judge Janvier in 1954:
[T]he idea which prompted the enactment of the compensation statute was not that the compensation should fully reimburse the injured employee, but only that he should be paid some reasonable amount to aid him in meeting his living expenses during that period of disability in which he could not earn his regular wages. Jackson v. Thomas, 75 So.2d 249, 252 (La.App.Orl.1954).
Similarly, it has been stated:
Workmen's compensation bears the imprint of social legislation in many important respects.... The scheme contemplates that compensation payments to the injured worker shall be measured in terms of the obligation of society to afford him a minimal support rather than in terms of replacing all elements of his personal loss. Malone and Johnson, supra, Vol. 13, § 33, at 43 (emphasis added).

(3) PARTICULAR PROVISIONS OF THE WORKER'S COMPENSATION LAW
Provisions of the current Worker's Compensation Law also support the conclusions that weekly benefits are (1) intended as partial replacement for lost wages, (2) intended as compensation for lost wage earning capacity, and (3) not intended as compensation for pain and suffering. For example, La.R.S. 23:1201 provides in part: "Payments of compensation ... shall be paid as near as may be possible, at the same time and place as wages were payable to the employee before the accident..." (emphasis added). La.R.S. 23:1206 provides for a credit against compensation payment if an employee accepts voluntary payment or unearned wages from his employer. La.R.S. 23:1225 provides for reduction of benefits if an injured worker receives federal unemployment benefits. La. R.S. 23:1221(3)(d)(iii) provides for reduction of benefits if an injured worker receives old age insurance benefits under the Social Security Act.
The legislature obviously envisioned compensation payment would be made in such a way as to avoid interruption of regular wages following an accident. This was done by insuring benefits would be paid at the same time and place as regular wages, but only to the extent that wages or other forms of wage replacement were not available. Compensation benefits generally provide two-thirds of weekly wages during periods of recovery from work-related injury based on the severity of the injury. La.R.S. 23:1221. In this way the economic hardship of work-related injuries is at least partially reduced.
Not only do weekly benefits compensate in part for lost wages, but it is clear they insure against lost ability or capacity to earn wages. Two specific provisions of the Worker's Compensation Law bear this out. First, as has already been explained, a part-time or seasonal worker may be entitled to more in compensation than he actually would have earned from that particular employer. This circumstance is consistent with the notion that weekly benefits insure against lost ability to earn in addition to actual lost wages from that employer. If not injured (disabled), the worker could possibly have secured another wage earning job. However, since the worker now has diminished capacity to work, the Act *13 provides for benefits which may exceed the wages the employer would have paid had the worker never been disabled.
The second provision of the Worker's Compensation Law which demonstrates weekly benefits insure against lost ability to work and earn wages and not merely to lost wages, vis a vis his former job, is the schedule for permanent partial disability. La.R.S. 23:1221(4). Benefits are paid for anatomical loss of use or amputation according to a schedule and regardless of whether the employee is unable to continue in his current job. Though the employee has not lost any actual wages from that employer, it is apparent the permanent partial disability could impair the employee's ability to get a better paying job.[8]
Finally, the current version of the Worker's Compensation Law indicates implicitly that pain and suffering is not an element of weekly benefits. La.R.S. 23:1221(3) provides if an injured employee is able to earn a percentage of his former wages by working "while in pain," then he shall not receive supplemental earnings benefits for that percentage of wages earned. That is to say, pain and suffering itself is not compensable, but only the inability to work and earn a wage is compensable.

(4) SUMMARY
Whether weekly compensation benefits are partially in lieu of pain and suffering or general tort damages or are merely in lieu of lost wages and lost earning capacity was not answered authoritatively by previous cases. However, the policy behind the Worker's Compensation Law and specific provisions of the Act indicate that weekly benefits compensate for lost wages and lost earning capacity, but not for other damages such as pain and suffering.

IS THERE DOUBLE RECOVERY IF AN EMPLOYEE KEEPS 100% OF HIS AWARD FOR PAIN AND SUFFERING?
Once it is understood that an employee is not compensated at all for pain and suffering by worker's compensation benefits, then this question is answered.[9] What was never paid cannot be reimbursed. La.R.S. 23:1103 requires that tort damages be "apportioned" to reimburse the employer for compensation benefits, but the only overlap between tort damages paid by a third party tortfeasor and weekly compensation benefits is loss of wages and loss of wage earning capacity. Thus, only the awards for these elements of tort damages can be apportioned toward the weekly benefits already paid.
Accordingly, reimbursement to the compensation insurer in this case must necessarily be limited only to the damage awards for loss of earnings and medical expenses. An injured worker, as any other tort victim, is entitled to his full recovery for non-economic losses. There should be no reduction in his award for the pain and suffering element simply to give a compensation insurer full reimbursement. As we stressed in Fontenot, the Louisiana Worker's Compensation Law only requires reimbursement to the extent that damages for lost wages and medical expenses are recovered from a third party tortfeasor. No preference is granted to the compensation intervenor over the employee's award for pain and suffering. In this way, the true *14 purpose of the compensation law will be fulfilled. As we have frequently stated, the law must be given a liberal interpretation to effect its beneficient purpose of relieving workers of the economic burden of work-connected injuries by diffusing the cost in the channels of commerce. Lester v. Southern Cas. Ins. Co., 466 So.2d 25 (La.1985). The above interpretative analysis of La.R.S. 23:1103 fulfills this methodology and purpose and is reflective of what we construe to be the legislative intent.

CONCLUSION
We have concluded the intervenor's reimbursement for past weekly benefits should be limited to the award for past loss of earnings. It necessarily follows that credit for future compensation likewise must be limited to the award for future loss of earnings. To allow reimbursement and credit beyond this would reduce the injured worker's recovery for non-economic losses. It would also be contrary to the liberal interpretation afforded the compensation act and the humanitarian spirit within which it was enacted.
Accordingly, we reverse the judgment of the court of appeal, and reinstate the judgment of the trial court.
REVERSED.
MARCUS, J., dissents and assigns reasons.
WATSON, J., dissents, believing the compensation insurer is entitled to be reimbursed from the total award of damages.
MARCUS, Justice (dissenting).
I dissented in Fontenot v. Hanover Insurance Company, 385 So.2d 238 (La. 1980), wherein the majority held that an employer or his worker's compensation insurer was not entitled to reimbursement for medical expenses paid from an employee's award for pain and suffering, which did not include medical expenses. Likewise, I disagree with the majority's holding in the instant case that Fireman's Fund Insurance Company's reimbursement for past weekly benefits paid should be limited to the award for past loss of earnings and that its credit for future compensation must be limited to the award for future loss of earnings. Nothing in La.R.S. 23:1103 indicates that reimbursement is dependent on the elements of loss for which the employee recovers damages. It provides that "damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent." (Emphasis added.) The parties stipulated that Fireman's Fund Insurance Company actually paid $39,973.42 as compensation for plaintiff's injury. Therefore, Fireman's Fund Insurance Company should be entitled to the first $39,973.42 recovered by plaintiff. Accordingly, I respectfully dissent.
NOTES
[1] The suit as originally filed named the defendant as A.J. Chicola, d/b/a Chicola Moving and Storage. By supplemental and amending petition, plaintiff substituted Daniel Chicola for A.J. Chicola who had been incorrectly named as defendant. Later added as defendants were Ronald Chicola, John Guillot, United States Fidelity and Guaranty Company, and Guaranty National Insurance Company.
[2] Normally, when a person is injured he is partially or totally prevented from working. This is properly referred to as "impairment of earning capacity." This element of damages is often referred to by courts as "loss of earnings." However, the loss of earning capacity is not limited to a person's actual earnings. For example, an unemployed person may recover for the impairment of his earning capacity. Folse v. Fakouri, 371 So.2d 1120, 1122 (La. 1979).
[3] La.R.S. 23:1103 provides in part: "In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per annum, and shall be satisfied by such payment."
[4] We note in most other jurisdictions reimbursement may be taken from the sum awarded for pain and suffering. "(I)t is quite clear, as the cases now stand, that the prevailing rule in the United States refuses to place an employee's third party recovery outside the reach of the employer's lien on the ground that some or all of it was accounted for by damages for pain and suffering."

2A A. Larson, Workmen's Compensation Law § 74.35, at 14-476 (1987).
[5] We note another passage in Malone and Johnson seems to support this statement. Malone and Johnson state that under the Louisiana Act "compensation" comprehends three items: (1) a sum for lost earning capacity, (2) medical expenses, and (3) the "schedule" losses for lost limbs or organs, or for disfigurement. Malone and Johnson, supra, Vol. 13, § 271, at 594. Since the weekly benefits plaintiff has received do not fit either the second or third categories, then one would suppose that the weekly benefits plaintiff received are compensation only for lost wage earning capacity.
[6] See also LaGraize v. Bickham, 391 So.2d 1185, at 1192 (La.App. 4th Cir.1980), where the fourth circuit stated, "While Fontenot admittedly dealt with reimbursement for medical expenses, its rationale clearly contemplates reimbursement for weekly compensation benefits."
[7] The third circuit in the instant case does suggest that its conclusion is supported by a desire to avoid a "double recovery" by the employee. This suggestion will be more fully considered below. However, at this point the question of "double recovery" merely begs the question. If weekly benefits do not compensate for pain and suffering, then allowing the employee to keep 100% of his award for pain and suffering cannot be a double recovery because he never recovered from the employer for pain and suffering in the first place.
[8] In footnote 5, above, we noted Malone and Johnson characterize the "schedule" damages for loss of limb, et cetera, as a separate item of compensation. It is possible, however, to view this item as a sub-category of lost earning capacity. Whether a worker loses his current job and wages or not, it is apparent loss of a limb could impair his capacity to get another, and possibly better, job. Thus, although the compensation for loss of limb is computed by a schedule and not by attempting to compute the actual partial disability, we prefer to view this a compensation for lost capacity to earn and not as a separate item unrelated to earning capacity as Malone and Johnson suggest. See, Malone and Johnson, supra, Vol. 13, § 271, at 594.
[9] Senac v. Sandefer, 418 So.2d 543 (La.1982), a case with a similar issue, but which was decided under the Insurance Guarantee Association Law, La.R.S. 22:1375 et seq., held a double recovery will not result from a judgment against a third party tortfeasor awarding a claimant under the Insurance Guarantee Association Law, who has already received worker's compensation benefits, general damages which do not include lost wages or medical expenses.