616 So.2d 749 (1993)
Marlene HURST
v.
DRUSILLA SEAFOOD OF HAMMOND, a Louisiana Partnership, et al.
No. CA 91 2034.
Court of Appeal of Louisiana, First Circuit.
March 5, 1993.
Rehearing Denied April 28, 1993.
*750 James Wattigny, Hammond, for plaintiff-appellee.
Timothy G. Schafer, New Orleans, for defendant-appellant, Security Ins. Co.
Timothy M. Waller, Metairie, for Aetna Cas. Ins. Co.
Bruce C. Dean, New Orleans, for United States Fire Ins.
Before EDWARDS, SHORTESS and WHIPPLE, JJ.
EDWARDS, Judge.
On March 28, 1988, Mrs. Marlene Hurst filed suit against Drusilla Seafood of Hammond restaurant (Drusilla), its insurer, Security Insurance Company of Hartford (Security), and Chair Products, Inc., a manufacturer of chairs, for personal injuries that Mrs. Hurst sustained while hosting a board meeting and Christmas party for her employer, Independence Housing Authority. Mrs. Hurst was injured when the arm of her chair broke and she fell to the floor. Subsequently, other alleged chair manufacturers or distributors were substituted for Chair Products, Inc.
After Drusilla filed for bankruptcy and the claim against the alleged manufacturers or distributors of the chairs was severed, the remaining defendant before the court at the trial of this portion of the suit was Drusilla's insurer, Security. Aetna Casualty and Surety Company (Aetna) intervened to recover the amount of worker's compensation benefits it had paid on behalf of Mrs. Hurst's employer, Independence Housing Authority.
The jury assessed 25% of the fault to Mrs. Hurst, 75% to Drusilla, and awarded the plaintiff $100,000 in general damages, $40,000 in past lost income, and $60,000 for future loss of income. The trial court rendered judgment based on the jury verdict, awarded stipulated medical expenses of $52,935.00 to plaintiff, and awarded $80,204.56 as reimbursement to Aetna; the awards to plaintiff and Aetna were ordered reduced by the percentage of plaintiff's fault.
Mrs. Hurst filed a motion for a new trial, or in the alternative, a judgment notwithstanding the verdict (JNOV). The trial court granted the JNOV and, subsequently, conditionally granted the motion for a new trial. The trial court found no negligence *751 on the part of the plaintiff, increased the award for general damages to $150,000, and increased the award for past lost income or earnings to $92,000. The JNOV did not include a provision requested by Aetna for the recovery of payments made to and on behalf of Mrs. Hurst between the trial and the date the judgment is paid.
Security appealed the JNOV and assigned error to the finding by the trial court of no plaintiff fault and the increases in the awards for general damages and loss of income.
Aetna and Mrs. Hurst filed answers to the appeal. In its answer, Aetna prayed that the judgment be amended to allow the recovery of payments made to Mrs. Hurst between the trial and the date the judgment becomes fully paid and satisfied and that the reimbursement be made in preference and priority out of any amounts awarded to Mrs. Hurst. Aetna argues in its brief that the recovery of any payments due Aetna should be by first dollar preference, regardless of whether the jury or trial court characterized the award as noneconomic damages. Aetna asserts that the amendment to LSA-R.S. 23:1103, designated as part B, allows first dollar reimbursement "without regard to how the damages have been itemized or classified by the judge or jury." LSA-R.S. 23:1103 B. Although the amendment had an effective date of January 1, 1990, Aetna argues for retroactive application. In the answer filed by Mrs. Hurst, she prayed that Aetna be "entitled to recover only a portion of any amounts which it may pay from the time of the trial ... until final judgment herein for disability payments and ... denied any recovery whatsoever for the payment of medical expenses which it pays to or on the behalf of Marlene Hurst from the date of the trial ... until the judgment is ... satisfied." Mrs. Hurst argues that Aetna is not entitled to any payments for medical expenses after trial because the jury did not make any award for future medical expenses. Mrs. Hurst asserts that any preferential payment to Aetna from non-economic awards is improper under Brooks v. Chicola, 514 So.2d 7 (La.1987) and any reimbursement for compensation benefits paid from the time of trial until the judgment is satisfied is limited to the loss of earnings award.

STANDARD FOR JNOV
Security appealed the grant of the JNOV and assigned error to the reapportionment of fault and the award of increased damages.
The use of a JNOV is controlled by Louisiana Code of Civil Procedure article 1811. However, article 1811 does not provide the standard to be used by the trial court when considering a motion for a JNOV. The Louisiana Supreme Court set forth the proper criteria and explained its use in Anderson v. New Orleans Public Service, 583 So.2d 829 (La.1991).
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied. [citation omitted.] In making this determination, the court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party.
In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct *752 in granting the motion. If, however, reasonable men in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated.
Anderson, 583 So.2d at 832.
On the issue of damages, "[o]nce a trial court has concluded that a JNOV is warranted because reasonable men could not differ on the fact that the award was either abusively high or abusively low, it must then determine what is the proper amount of damages to be awarded." Anderson, 583 So.2d at 833. The trial court, in making the determination, "is not constrained as the courts of appeal are to raising (or lowering) the award to the lowest (or highest) point which is reasonably within the discretion afforded that court." Anderson, 583 So.2d at 833. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).

APPORTIONMENT OF FAULT
Security argues that the jury had sufficient evidence before it to find that Mrs. Hurst either improperly used the arms of the chair and overbalanced the chair or sat or arose from the chair in a negligent manner. As another possible basis for the jury's assessment of fault, Security points to the testimony of plaintiff's treating general physician, Dr. Merlin Allen, who testified that shortly after the accident Mrs. Hurst reported to him that "she was either going to sit down or lean on the edge of the chair and fell out of the chair and hurt her back."
Security believes that the trial court made its own credibility determinations, discounted the conflicting testimony of Dr. Allen and the defendant's witnesses, and found that the plaintiff was not at fault in causing the accident. Because the JNOV was based on an improper reevaluation of the credibility of the witnesses by the trial court, Security asks that the jury's apportionment of 25% of the fault to Mrs. Hurst be reinstated.
Although this court may have weighed the testimony of the witnesses differently from the jury, we cannot say that the facts and inferences pointed so strongly and overwhelmingly in favor of plaintiff that reasonable men could not differ. The jury had evidence before it of such a conflicting nature that it is impossible for us to say that reasonable men could not have come to different conclusions. The jury might have discounted some of the testimony of the plaintiff's witnesses because of conflicts in their stories brought out by the submission at trial of affidavits sworn to by the witnesses before trial. The jury also could have given more weight to the testimony of Dr. Allen. Therefore, based on the Anderson criteria, we find that the trial court erred in the grant of the JNOV as to the apportionment of fault.
Because we find that the trial court erred in its grant of the JNOV as to apportionment of fault, we reverse that portion of the JNOV and reinstate the jury's 25% assessment of fault to the plaintiff.

GENERAL DAMAGES
Security argues that the trial court erred by granting the JNOV and increasing the general damage award to $150,000. It is argued that the grant of the JNOV was error because the jury had a basis for finding that the plaintiff sustained an earlier injury and suffered from a preexisting condition. Although Mrs. Hurst is entitled to damages, Security believes that she should be compensated only to the extent of the aggravation of the original condition. Therefore, Security asserts, the award of $100,000 for the aggravation of the preexisting condition was not an abuse of the jury's discretion.
Mrs. Hurst was admitted to the hospital the day after the accident at Drusilla. Dr. Allen, her primary care physician, referred her to a Dr. Anthony Ioppolo, a neurosurgeon. Dr. Ioppolo diagnosed a ruptured disc and performed a lumbar discectomy and foraminotomy in February of 1988. Mrs. Hurst reported some improvement and a lessening of pain after the surgery, but the surgery did not resolve most of the pain or significantly improve the spasms and weakness Mrs. Hurst experienced in *753 her lower back and right leg. Dr. Ioppolo assigned a rating of 15 to 20% permanent disability to the body, but felt that no further surgery was indicated.
Dr. Allen continued to be concerned about Mrs. Hurst and referred her to Dr. Kenneth Adatto, an orthopedic surgeon. Dr. Adatto ran additional tests and determined that another operation was necessary to remove the remaining ruptured disc material. In February of 1991, the disc material was removed and an anterior lumbar fusion was performed. Dr. Adatto felt that Mrs. Hurst had an 85% chance of relief and could probably return to her normal activity within a year to a year and six months of surgery.
Neither Dr. Ioppolo nor Dr. Adatto were apprised of Mrs. Hurst's previous back injury or problems with low back pain. In 1977, Mrs. Hurst sustained a low back injury and was subsequently hospitalized at East Jefferson Hospital for a discogram and a myelogram. Mrs. Hurst also sought chiropractic care for pain from Dr. Charles Gideon. Dr. Gideon testified that she had low back pain that radiated into her right leg. He diagnosed a lumbosacral strain with degenerative joint disease and right sciatic radiculitis. Dr. Gideon treated Mrs. Hurst from September, 1977 to July, 1978. At the end of the treatment, Mrs. Hurst had not responded as hoped. Dr. Gideon felt at the time that the degenerative condition would continue to progressively worsen. In 1978, Dr. Gideon assigned a 10% permanent disability rating to Mrs. Hurst.
Apparently, Mrs. Hurst continued to have low back problems. In 1983, she was admitted to the Seventh Ward Hospital emergency room for severe back pain.
Mrs. Hurst testified that, although she had experienced lower back pain in the past, the condition did not significantly restrict her activities. After the accident at Drusilla, she was unable to engage in any of her hobbies or leisure activities and could not effectively contribute to the housework. She also was unable to fulfill her job duties, which included repetitive bending and stooping. However, a job description introduced at trial, showed that Mrs. Hurst's job did not require the extent of physical activities that she had always volunteered for in the past.
The plaintiff bears the burden of proving the causal relationship between the accident and the complained of injuries. A defendant takes a victim as he finds him. The defendant is responsible for all the natural and probable consequences of his tortious act. When the negligent action aggravates a preexisting injury or condition, the defendant must compensate the victim for the full extent of the aggravation. American Motorist v. American Rent-All, 579 So.2d 429, 433 (La.1991); Sanders v. Collins, 551 So.2d 644, 651 (La.App. 1st Cir.1989), cert. denied, 556 So.2d 1261 (La.1990).
Certainly, Mrs. Hurst proved that she was injured in the accident at Drusilla. Her major restrictions surfaced only after she fell at the restaurant. However, the jury also could have found that a preexisting low back problem was proved, that the preexisting condition resulted in a prior 10% disability rating, and that the accident at Drusilla aggravated the preexisting condition.
After a thorough review of the record, we cannot say that reasonable men could not differ on the fact that an award of $100,000, although at the low end of an appropriate range, was abusively low. Therefore, we find that the trial court erred in granting the JNOV and awarding an additional amount for general damages.

DAMAGES FOR LOSS OF INCOME
Security did not assign error to the trial court's increase of the award for past lost income to $92,000. However, Security asserts that after the increase, the trial court erred by not deleting the award by the jury for future loss of income or earnings.
Security argues that the jury was confused and awarded $100,000 as an approximation of the $92,000 figure submitted at trial as past lost income. The jury then split the award between the categories of *754 past and future loss of income. We find no support for this argument in the record.
The evidence does support an award for future loss of earning capacity or income. Among the factors that could have been considered by the jury are: age, life and work expectancy, probable future earning capacity, loss of future earning capacity, and prospects for rehabilitation. Brown v. DSI Transports, Inc., 496 So.2d 478, 484 (La.App. 1st Cir.), cert. denied, 498 So.2d 18 (La.1986).
Based on these factors, the jury was well within its discretion in awarding $60,000 to plaintiff for loss of earnings or earning capacity. Dr. Adatto gave plaintiff an 85% chance of returning to work and to normal activities. The jury may have made an award based on the uncertainty of plaintiff's recovery or may have believed that the plaintiff's work life would be shortened. Therefore, we affirm the grant of the JNOV and the increase in past lost income to $92,000, and affirm the $60,000 awarded for future loss of earnings.

ADDITIONAL RECOVERY CLAIMED BY AETNA
Aetna is entitled to reimbursement for disability payments made from the time of trial until the judgment is paid and satisfied. LSA-R.S. 23:1103; Hale v. Aetna Life and Cas. Ins. Co., 580 So.2d 1053, 1057 (La.App. 3rd Cir.), cert. denied, 585 So.2d 571 (La.1991). See Thomas v. Hanover Ins. Co., 477 So.2d 1171, 1174 (La.App. 1st Cir.1985), affirmed, 488 So.2d 181 (La.1986). However, Aetna is not entitled to be reimbursed from the noneconomic damages, i.e. the award for pain and suffering. In fact, the credit to Aetna for reimbursement for these future compensation benefits can be paid only from the award for future loss of earnings. Brooks v. Chicola, 514 So.2d at 14.
As to the issue of the retroactivity of the amendment to section 1103, the Louisiana Supreme Court held in St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809 (La.1992), that the amendment "is substantive and thus cannot be applied retroactively to rights and duties arising out of events which occurred prior to this change in the law." 609 So.2d at 822.
Aetna is not entitled to recover for future medical expenses not awarded by the jury. Robertson v. Employer's Cas. Co., 546 So.2d 263, 266 (La.App. 1st Cir.1989).

CONCLUSION
For the foregoing reasons, we reverse the judgment in part, amend, and as amended, affirm the judgment in part. We reverse the grant of the JNOV as to the apportionment of fault and as to the increase in general damages. We reinstate the verdict of the jury assessing 25% of the fault to plaintiff and the jury's award of $100,000 for general damages. We affirm the grant of the JNOV and the increase in the award for past lost income to $92,000, and affirm the award of $60,000 for future lost wages. As in the first judgment, the awards to plaintiff and Aetna are reduced by the amount of plaintiff's fault. The judgment is amended to include a credit to Aetna for reimbursement for compensation payments made between the end of trial and the date the judgment is fully paid and satisfied, with such reimbursement limited to the award for future loss of earnings.
Costs of the appeal are assessed equally among Marlene Hurst, Security and Aetna.
REVERSED IN PART, AMENDED, AND AS AMENDED, AFFIRMED IN PART.