657 So.2d 580 (1995)
Floyd F. DEGRUISE, et al.
v.
HOUMA COURIER NEWSPAPER CORPORATION, et al.
No. 94 CA 2386.
Court of Appeal of Louisiana, First Circuit.
June 23, 1995.
*582 Kentley R. Fairchild, Houma, for plaintiffs.
Robert R. McBride, Lafayette and James E. Diaz, Jr., Lafayette, for defendant/appellant.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in an action for damages arising out of a rear-end collision.

FACTS
On December 18, 1990, petitioner, Floyd F. Degruise, was stopped for a traffic light at the intersection of Louisiana Highway 660 and U.S. Highway 90 in Houma, Louisiana. The vehicle operated by Degruise was owned by his employer, South Louisiana Electric Cooperative Association (SLECA), and Degruise was in the course and scope of his employment at the time of the accident. While stopped at the intersection, the SLECA vehicle was rear-ended by an automobile owned and operated by Diane B. Scott. At the time of the accident, Scott was delivering newspapers for Houma Courier Newspaper Corporation. As a result of this accident, Degruise sustained various injuries.
On October 8, 1991, Degruise and his wife, Della, individually and on behalf of their two minor children, filed the instant petition for damages. Named in their petition were: Houma Courier Newspaper Corporation (Houma Courier), the alleged employer of Scott; Liberty Mutual Insurance Company (Liberty Mutual), the liability insurer of Houma Courier;[1] Diane B. Scott; American National Agents Insurance Company (American), the liability insurer of the Scott vehicle;[2] Federated Rural Electric Insurance Corporation (Federated), the uninsured/underinsured *583 (UM) insurer of SLECA;[3] and Louisiana Farm Bureau Mutual Insurance Company (Farm Bureau), Degruise's uninsured/underinsured (UM) insurer. In a subsequent supplemental and amending petition, petitioners raised a claim against Federated pursuant to LSA-R.S. 22:658 for arbitrary and capricious refusal to pay petitioners' UM claim.
On December 13, 1991, SLECA and Federated, as SLECA's worker's compensation insurer, filed a petition of intervention, seeking reimbursement for any and all medical and weekly worker's compensation benefits paid to or on behalf of Degruise. SLECA and Federated subsequently amended the petition of intervention, alleging that the payment of any "UM benefits would be subject to the subrogated claim of Federated as the worker's compensation carrier." By judgment, dated February 25, 1993, the intervention was severed from the principal demand.
On September 1, 1992, Houma Courier filed a motion for summary judgment on the grounds that Scott was not its employee or, alternatively, was not in the course and scope of her employment at the time of the accident. By judgment, dated September 18, 1992, the trial court granted Houma Courier's motion for summary judgment and dismissed petitioners' claims, as well as the cross claims of Farm Bureau and Federated, against Houma Courier.
On September 1, 1992, petitioners filed a motion for summary judgment as to their claims against Federated with regard to the UM coverage. On September 18, 1992, the trial court rendered judgment, granting petitioners' motion for summary judgment and finding that the Federated policy afforded UM coverage of $1,000,000.00.[4] On September 9, 1992, petitioners filed a motion for summary judgment against Farm Bureau with regard to the UM coverage. By judgment, dated October 23, 1992, the trial court rendered judgment, granting petitioners' motion for summary judgment and finding that the Farm Bureau policy afforded $25,000.00 in UM coverage.[5]
On January 26, 1993, Farm Bureau filed a motion for summary judgment against Federated, requesting the court to decree that Federated issued to SLECA a commercial umbrella policy which afforded UM coverage with limits of $10,000,000.00. Thereafter, on February 16, 1993, petitioners filed a motion for summary judgment requesting the same relief as was set forth in the Farm Bureau motion. Petitioners' motion for summary judgment was granted on March 1, 1993.[6]
Prior to trial, the parties stipulated that Federated, as the worker's compensation carrier, paid worker's compensation of $40,809.45 and medical benefits of $18,093.14 for *584 a total of $58,902.59 through June 16, 1994. After a jury trial on the merits, the jury rendered a verdict as follows:

1) What award, if any, do you give Floyd
 Degruise for the following:
a) Past and present medical
 expenses: $ 22,000
b) Future medical expenses: $ 190,000
c) Past, present and future
 physical and mental
 pain and suffering: $ 290,000
d) Past, present, and future
 economic loss
 and/or earning capacity $ 600,000
e) Permanent/Partial disability: $ 100,000
TOTAL $1,202,000
 * * *
2) What award, if any, do you award to
 Della Degruise, Trent Degruise, and
 Trevor Degruise for their loss of consortium?
 Della Degruise $ 75,000
 Trevor Degruise $ 25,000
 Trent Degruise $ 25,000

Thereafter, the trial court rendered judgment on July 19, 1994, in favor of Degruise and against Federated for $1,202,000.00, together with legal interest from date of judicial demand until paid. The trial court also rendered judgment in favor of Della, Trevor, and Trent Degruise and against Federated for $75,000.00, $25,000.00, and $25,000.00, respectively, together with legal interest from date of judicial demand until paid. The trial court judgment also awarded Degruise the sum of $240,400.00 in penalties and attorney's fees pursuant to LSA-R.S. 22:658 against Federated from date of judgment until paid. Judgment was also rendered in favor of Della Degruise in the amount of $15,000.00 for penalties and attorney's fees pursuant to LSA-R.S. 22:658 from judgment until paid. Trevor and Trent Degruise were each awarded the sum of $5,000.00 in penalties and attorney's fees with legal interest from judgment until paid against Federated. Federated, as UM insurer, was cast for all costs, including expert witness fees, which were set by the court.
Thereafter, pursuant to a motion for new trial filed by Federated and SLECA, the trial court granted the motion for new trial, amended the trial court judgment, and rendered judgment on the intervention in favor of Federated, as worker's compensation carrier for SLECA, and against Degruise and Federated, as the UM insurer, the stipulated sum of $58,902.59 to be satisfied out of the $1,202,000.00 judgment rendered in favor of Degruise on the main demand. The amended judgment also decreed that Federated, as the worker's compensation carrier, and SLECA were entitled to a credit of $1,202,000.00, less attorney's fees and costs, against future compensation and medical benefits. In all other respects, the original judgment of the trial court was incorporated into the amended judgment.[7]
From this adverse judgment, Federated suspensively appeals, assigning the following errors:
1. The trial court erred in ruling that there was no valid selection of lower uninsured/underinsured policy limits prior to the accident, and that Endorsement ARB 66 (9-88), effective July 1, 1989, increasing the UM coverage from $5/10,000.00 to $20,000.00 in total coverage without a signed selection from SLECA to that effect, had the effect of equating the amount of UM coverage to the liability coverage of $1,000,000.00 provided by Federated's primary auto policy.
2. The trial court erred in ruling that the commercial umbrella policy issued by Federated provided UM coverage in the amount of $10,000,000.00 per occurrence.
3. The trial court erred in holding that the UM coverage provided by the commercial umbrella policy was directly sequential to that provided by the primary auto policy.
4. The jury was manifestly erroneous in awarding damages to the plaintiff, particularly *585 for future economic loss, without consideration of his shortened life expectancy from an unrelated cause.
5. The trial court erred in awarding penalties and attorney's fees on the basis that, once the court had decided that the policies applied and extended UM coverage up to the respective liability limits of $1,000,000.00 and $10,000,000.00, Federated had a duty to tender funds.

SUMMARY JUDGMENT
In the instant case, the issues regarding the primary and umbrella UM insurance coverage were disposed of on pre-trial motions for summary judgment. On appeal, Federated contends that the trial court erred in granting the motions for summary judgment with regard to the UM coverage on the primary and umbrella insurance policies.
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La.1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. Ortego v. Ortego, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983).
Summary judgments are not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583. In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, *586 Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir.1988).

UNINSURED MOTORIST (UM) INSURANCE
Louisiana law, as well as judicial interpretation of public policy strongly favoring UM coverage, is unambiguous and unyielding with respect to UM coverage. The law regarding such coverage is so strong that typical contractual concepts, which exist and are usually applied to insurance contracts, are not considered in determining whether the insurance policy contained UM coverage. Dibos v. Bill Watson Ford, Inc., 622 So.2d 677, 679 (La.App. 4th Cir.1993).
UM coverage is determined not only by contractual provisions, but also by the applicable statutes. Roger v. Estate of Moulton, 513 So.2d 1126, 1130 (La.1987). In Louisiana, UM coverage is provided for in LSA-R.S. 22:1406. This statute embodies a strong public policy and is to be liberally construed such that statutory exceptions to the UM coverage requirements are interpreted strictly. Giroir v. Theriot, 513 So.2d 1166, 1167 (La.1987); Roger v. Estate of Moulton, 513 So.2d at 1130; Holbrook v. Holliday, 93-1639, p. 4 (La.App. 3rd Cir. 6/1/94), 640 So.2d 804, 807, writ denied, 94-1735 (La. 10/7/94), 644 So.2d 642; Faucheaux v. Boston Old Colony Insurance Company, 93-384 (La. App. 5th Cir. 3/16/94), 633 So.2d 959, 963, writ granted in part and denied in part, 94-1296 (La. 9/30/94), 642 So.2d 858.
The object of the UM statute is to promote recovery of damages for innocent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance and as additional or excess coverage when he is inadequately insured. Tugwell v. State Farm Ins. Co., 609 So.2d 195, 197 (La.1992); Henson v. Safeco Insurance Companies, 585 So.2d 534, 537 (La. 1991); Giroir v. Theriot, 513 So.2d at 1167; Roger v. Estate of Moulton, 513 So.2d at 1130; Faucheaux v. Boston Old Colony Insurance Company, 633 So.2d at 963. In other words, the clear purpose of the UM statute is to promote the recovery of damages for innocent victims of automobile accidents when the tortfeasor is either uninsured or underinsured. Holbrook v. Holliday, 640 So.2d at 807. This purpose is accomplished by making UM coverage available for the victim's benefit as primary protection against the tortfeasor not adequately insured. Holbrook v. Holliday, 640 So.2d at 807.
Under LSA-R.S. 22:1406 D(1)(a), UM coverage is automatic. Whether the parties intended such coverage does not matter. Public policy demands and LSA-R.S. 22:1406 D(1)(a) dictates that UM coverage up to the policy's limit, even if nowhere mentioned in the policy, be read into every insurance contract as if it were written on the face of the policy. Henson v. Safeco Insurance Companies, 585 So.2d at 537; Dibos v. Bill Watson Ford, Inc., 622 So.2d at 679. As a result, every automobile liability policy delivered or issued for delivery in this state is impliedly amended to include UM coverage, unless coverage is validly rejected. Giroir v. Theriot, 513 So.2d at 1167; Faucheaux v. Boston Old Colony Insurance Company, 633 So.2d at 963. UM coverage may be specifically rejected by the insured in the insurance contract, pursuant to statutory guidelines. However, any exception to the mandatory UM coverage is to be strictly construed. Tugwell v. State Farm Ins. Co., 609 So.2d at 197; Henson v. Safeco Insurance Companies, 585 So.2d at 537; Faucheaux v. Boston Old Colony Insurance Company, 633 So.2d at 963.

REJECTION OR SELECTION OF LOWER LIMITS OF UM COVERAGE
The UM statute generally provides that UM coverage exists in amounts not less than the limits of bodily injury liability unless the insured rejects in writing the coverage or selects lower limits. Tugwell v. State Farm Ins. Co., 609 So.2d at 198; Holbrook v. Holliday, 640 So.2d at 807; Guilbeau v. Shelter Mutual Insurance Co., 549 So.2d 1250, 1254 (La.App. 3rd Cir.1989). The UM statute has been amended several times with regard to the right to reject coverage or to select lower *587 limits and the form and effect of such rejection or selection.
The original UM statute, adopted by Acts 1962, No. 187, effective October 1, 1962, required UM coverage in every automobile insurance policy issued in Louisiana, in an amount not less than the limits mandated for bodily injury damages by the Motor Vehicle Safety Responsibility Law. The initial statute also gave the named insured the right to reject UM coverage. See Henson v. Safeco Insurance Companies, 585 So.2d at 537.
By Acts 1972, No. 137, effective January 1, 1973, the legislature mandated that all automobile liability insurance policies delivered or issued for delivery in this state provide UM coverage in not less than the limits described in the Motor Vehicle Safety Responsibility Law unless "any insured named in the policy shall reject the coverage." The statute, however, did not specify the method to be used in rejecting coverage. See A.I.U. Insurance Company v. Roberts, 404 So.2d 948, 949-50 (La.1981).
The extent of coverage was further provided for in Acts 1974, No. 154, effective July 31, 1974, which required UM coverage in amounts of not less than the limits of bodily injury liability provided by the policy. Such coverage, however, was not required "where any insured named in the policy shall reject the coverage or select lower limits." (emphasis added). Again, the statute was silent as to the mode by which coverage was rejected or lower limits were selected. See A.I.U. Insurance Company v. Roberts, 404 So.2d at 950. To fill this void, the courts looked toward the general principles of insurance law. LSA-R.S. 22:628 provided that no agreement modifying coverage of an insurance contract was valid unless it was "in writing and physically made a part of the policy or other written evidence of insurance." The courts held that, in the absence of a more specific rule in LSA-R.S. 22:1406, a rejection of UM coverage or selection of lower UM limits was required to be in writing and attached to the policy pursuant to LSA-R.S. 22:628. Giroir v. Theriot, 513 So.2d at 1167; A.I.U. Insurance Company v. Roberts, 404 So.2d at 951-52.
Acts 1975, No. 494, effective September 12, 1975, retained the same coverage provisions, but coverage was not required to be "provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer." Pursuant to this provision, once a valid rejection was made, such rejection or selection was applicable to subsequent renewals. See A.I.U. Insurance Company v. Roberts, 404 So.2d at 950.
Act No. 438 of 1977, effective September 9, 1977, attempted to clarify the law with respect to the form of rejection or selection of lower limits. UM coverage as previously mandated was required unless the insured "shall reject in writing the coverage or selects lower limits." The rejection of such coverage or selection of lower limits was presumed to be a part of the policy regardless of whether it was physically attached. For the first time, the statute contained a requirement that rejection of coverage or selection of lower limits be in writing. See A.I.U. Insurance Company v. Roberts, 404 So.2d at 950-51. Moreover, the act provided that "[a]ny document signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto."[8]
Our determination of this case is controlled by the language of the statute in effect at the *588 time of the alleged rejection or selection of lower limits. See Henson v. Safeco Insurance Companies, 585 So.2d at 537; Giroir v. Theriot, 513 So.2d at 1168 n. 7. The initial selection/rejection form executed by SLECA and at issue in this case was executed on May 23, 1980, before the effective date of the 1987 amendment. Accordingly, the 1977 version of LSA-R.S. 22:1406 D(1)(a) is controlling.
At all times pertinent hereto, LSA-R.S. 22:1406 D(1)(a) provided as follows:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom; provided, however, that the coverage required under this Subsection shall not be applicable where any insured named in the policy shall reject in writing the coverage or selects lower limits. Such coverage need not be provided in or supplemental to a renewal or substitute policy where the named insured has rejected the coverage or selected lower limits in connection with a policy previously issued to him by the same insurer. Any documents signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto. (emphasis added.)
In Tugwell v. State Farm Ins. Co., 609 So.2d at 198, the Louisiana Supreme Court addressed the validity of a 1983 selection/rejection form, which acknowledged the offerance of the opportunity to purchase UM coverage and rejecting UM coverage as part of the application. In determining that this selection/rejection form failed to meet the requirements of LSA-R.S. 22:1406 D(1)(a), the court held that the UM statute provides the insured with three options, as follows:
UM coverage equal to bodily injury limits in the policy, UM coverage lower than those limits, or no UM coverage. A rejection on a form that prohibits the insured from choosing limits below liability coverage or which automatically chooses a certain lower amount for the insured, does not meet the statutory requirements because it forecloses options available to the insured by law.
Tugwell v. State Farm Ins. Co., 609 So.2d at 198.
Although the court in Tugwell addressed the validity of a total rejection of UM coverage and not a selection of lower limits, the court noted that the requirement that a choice of limits be made available to the insured also applied in determining whether a selection of lower limits was valid. Tugwell v. State Farm Ins. Co., 609 So.2d at 198, n. 4.
In order for there not to be UM coverage, "the insured or his authorized representative must expressly set forth in a single document that UM coverage is rejected in the State of Louisiana as of a specific date in a particular policy issued or to be issued by the insurer." Roger v. Estate of Moulton, 513 So.2d at 1132; Dibos v. Bill Watson Ford, Inc., 622 So.2d at 679; Ruiz v. Lewis, 579 So.2d 1203, 1205 (La.App. 4th Cir.), writ denied, 586 So.2d 562 (La.1991). A writing, regardless of the intention of the insured, of a less precise nature is insufficient to effect a valid rejection. Roger v. Estate of Moulton, 513 So.2d at 1132; Dibos v. Bill Watson Ford, Inc., 622 So.2d at 679. If rejection of UM is ambiguous, it is ineffective, regardless of the parties' intent. If the rejection is unambiguous, but not in proper form, it is ineffective. Dibos v. Bill Watson Ford, Inc., 622 So.2d at 679. Therefore, unless the insured's expression of his desire to reject or select lower limits of uninsured motorist coverage meets the formal requirements of law, the expression does not constitute a valid rejection. Faucheaux *589 v. Boston Old Colony Insurance Company, 633 So.2d at 963.
The insurer must place the insured in a position to make an informed rejection of UM coverage. Tugwell v. State Farm Ins. Co., 609 So.2d at 197; Henson v. Safeco Insurance Companies, 585 So.2d at 539. In other words, the form used by the insurance company must give the applicant the opportunity to make a "meaningful selection" from his options provided in the statute. Tugwell v. State Farm Ins. Co., 609 So.2d at 197. The court also noted that:
Implicit in the statute's requirement that the insurer make available to the insured the option of selecting lower limits is the idea that the insured be made aware of that option. Uhrich's requirement that the insured be given the option of selecting lower limits would be empty protection indeed if the insurer were not also required to make sure the insured is informed of such an option. An insured cannot exercise an option he does not know exists. This can be accomplished in several ways. For example, the insurer can require the insured to acknowledge in writing he has been informed of the options; or, the application itself can be set up in such a way through the use of blanks and boxes that it is apparent to the reasonable person that he has the option of selecting any lower limit he chooses. (footnote omitted.)
Tugwell v. State Farm Ins. Co., 609 So.2d at 199.
In other words, the insured must be able to select from a variety of coverage options for the choice to be a meaningful selection necessary for a valid waiver of UM coverage. Garcia v. Certified Lloyds Insurance Company, 598 So.2d 1278, 1279 (La.App. 4th Cir.), writ denied, 604 So.2d 969 (La.1992). The selection of lower UM limits requires an affirmative act by the insured, and, in order to select different limits, a choice of limits must be made available. Guilbeau v. Shelter Mutual Insurance Co., 549 So.2d at 1254.
In Uhrich v. National Fire Ins. Company, 569 So.2d 1062, 1064 (La.App. 3rd Cir.1990), writ denied, 572 So.2d 96 (La.1991), the insured had a standard automobile liability policy with UM limits of $300,000.00 and a personal umbrella policy with liability limits of $1,000,000.00. The insured had rejected UM coverage. However, the court determined that the form executed by the insured contained only two options, namely, full UM coverage or a rejection of UM coverage. The form failed to offer any limits lower than the full $1,000,000.00, nor did the form contain a blank where the insured could, if he so desired, have requested UM limits lower than his liability coverage. The appellate court determined that this form failed to meet the requirements under the law for a valid rejection of UM limits or a valid selection of lower limits.
The burden of proving that rejection of UM coverage was executed, in proper form, without ambiguity, by the proper person, or anything else regarding the effectiveness of such a rejection lies on the party seeking to enforce the rejection and escape UM liability. Tugwell v. State Farm Ins. Co., 609 So.2d at 197; Henson v. Safeco Insurance Companies, 585 So.2d at 538; Holbrook v. Holliday, 640 So.2d at 807; Dibos v. Bill Watson Ford, Inc., 622 So.2d at 679; Garcia v. Certified Lloyds Insurance Company, 598 So.2d at 1279; Guilbeau v. Shelter Mutual Insurance Co., 549 So.2d at 1254. Moreover, proof of rejection and its effectiveness shall be heavily scrutinized by courts in accordance with the strong public policy to encourage UM coverage as noted by the Louisiana Supreme Court, and as is inherent in the legislative language of the Louisiana statutory provisions. Dibos v. Bill Watson Ford, Inc., 622 So.2d at 679-80. See Henson v. Safeco Insurance Companies, 585 So.2d at 538; Roger v. Estate of Moulton, 513 So.2d at 1132.

A. PRIMARY UM COVERAGE

We must now determine whether the selection/rejection form used by Federated is proper.
The form utilized by Federated, which was introduced into evidence as P-1, provided as follows:
*590 
In the instant case, we find that Federated failed to carry its burden of proving that selection/rejection of UM coverage was executed, in proper form, without ambiguity. After reviewing the form utilized by Federated, we find that the May 23, 1980, selection/rejection form utilized was invalid.[9] The *591 form does not comport with the requirements of Tugwell in that it does not properly notify the insured that he has the option of selecting any lower limit he chooses.[10] Because the form pre-selected for the insured an amount of UM coverage equal to the Motor Vehicle Safety Responsibility Law in effect at the time, it does not permit the insured to select any limit he chooses.
The jurisprudence clearly provides that, in order to select different limits, a choice of limits must be made available. However, in this case, the insured was precluded from selecting from a choice of limits. As such, the selection/rejection form utilized by Federated is fatally defective.
Absent a valid rejection of UM coverage equal to the bodily injury liability limits or a valid selection of lower limits, the UM coverage under the primary policy is equal to the bodily injury liability limits or $1,000,000.00.

B. UMBRELLA UM COVERAGE

The law is clear that the UM statute is applicable to umbrella policies. Tugwell v. State Farm Ins. Co., 609 So.2d at 199. Although the law does not require the execution of separate UM selection forms for renewal or substitute policies, the selection of higher liability coverage is a new policy. Gaar v. Sowards, 573 So.2d 499, 501 (La.App. 1st Cir.), writ denied, 569 So.2d 990 (La. 1990); Guilbeau v. Shelter Mutual Insurance Co., 549 So.2d at 1255. As such, without the rejection of UM coverage or the selection of lower limits of UM coverage, LSA-R.S. 22:1406 D(1)(a) mandates UM coverage in an amount equal to the liability coverage. Gaar v. Sowards, 573 So.2d at 501.
With regard to the umbrella policy issued by Federated, the UM selection/rejection form executed by SLECA on May 23, 1980, was applicable to both the primary automobile and the umbrella policies. Because we have found that the selection/rejection form executed by SLECA in 1980 was invalid for the primary insurance, we find that it is likewise invalid for the umbrella policy.
Moreover, the umbrella policy initially issued to SLECA provided for liability limits of $5,000,000.00, and this policy was renewed various times. However, in 1983, the liability limits of the umbrella policy were increased to $10,000,000.00. This increase in the liability limits from $5,000,000.00 to $10,000,000.00 constituted a new policy, which required the execution of a new selection/rejection form. The record is devoid of evidence of any such selection/rejection form.
For these reasons, UM coverage under the umbrella policy issued by Federated is $10,000,000.00.
Because of our determination that the primary UM policy provides $1,000,000.00 in coverage, we find it unnecessary to address the issue of whether the umbrella UM policy was directly sequential to the primary UM policy.

DAMAGES
Federated contends that the jury erred in its future damage awards. Federated reasons that the jury improperly assessed damages to Degruise based on his actual life expectancy and failed to consider his shortened life-expectancy caused by an unrelated cancerous condition.
In the instant case, more than one and a half years after the automobile accident, Degruise was diagnosed with colon-rectal cancer, which was unrelated to the automobile accident. The tumor was removed in August, 1992. Thereafter, in February, 1994, plaintiff was again diagnosed with another cancer, this time in his liver. In April, 1994, a lobe of his liver was removed. The medical testimony presented showed that the cancer had been completely removed. However, medical experts testified that the chances of a 5-year cure rate vary from 30% and 40%. The medical testimony showed that 60% to 70% of the patients who suffer from the types of cancer Degruise had do not survive.
*592 Federated argues that Degruise had a shortened life-expectancy because of his unrelated cancers and that the damages for future losses should be diminished accordingly, citing Smith v. Millers Mutual Insurance Company, 419 So.2d 59, 63 (La.App. 2nd Cir.), writ denied, 422 So.2d 155 (La.1982).
In Smith, 419 So.2d at 63, the appellant contended that the trial court erred in using the LSA-R.S. 47:2405 life expectancy tables in calculating the award for future medical expenses because of the plaintiff's poor physical condition at the time of the trial which could be expected to adversely affect her projected life span. In support of its position, the appellant cited various federal court opinions from other jurisdictions which held that the use of life expectancy tables is disfavored where the plaintiff has a pre-existing condition or disease which adversely affects his or her projected life span, since the tables are based on the lives of healthy persons.
Federated's reliance on Smith, however, is clearly misplaced. The evidence at trial did not show that Degruise suffered from any pre-existing condition other than the seizure disorder, which had resolved itself many years prior to the accident. There is nothing in the evidence to suggest that, prior to the accident, Degruise had been diagnosed with cancer or that his life-expectancy was in any way diminished. He was, for all intents and purposes, an otherwise healthy person. However, after the accident, his pre-existing seizure disorder became symptomatic, and he sustained other physical injuries.
In Louisiana, every act of man that causes damages to another obliges him by whose fault it happened to repair it. LSA-C.C. art. 2315; Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Company, 618 So.2d 874, 876 (La.1993). One injured through the fault of another is entitled to full indemnification for damages caused thereby. Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Company, 618 So.2d at 876. In such a case, the obligation of the defendant is to indemnify the plaintiffto put him in the position he would have occupied if the injury complained of had not been inflicted upon him. Roman Catholic Church of Archdiocese of New Orleans v. Louisiana Gas Service Company, 618 So.2d at 876.
Moreover, a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La.1993); American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d 429, 433 (La.1991); Giamanco v. EPE, Inc., 619 So.2d 842, 845 (La.App. 1st Cir.1993); Hurst v. Drusilla Seafood of Hammond, 616 So.2d 749, 753 (La.App. 1st Cir.), writ denied, 623 So.2d 1337 (La.1993). The defendant's liability for damages is not mitigated by the fact that the plaintiff's pre-existing physical infirmity was responsible, in part, for the consequences of the plaintiff's injury by the defendant. Lasha v. Olin Corp., 625 So.2d at 1005. Where the defendant's negligent action aggravates a pre-existing injury or condition, he must compensate the victim for the full extent of his aggravation. Miley v. Landry, 582 So.2d 833, 837 (La.1991); American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d at 433; Giamanco v. EPE, Inc., 619 So.2d at 845; Hurst v. Drusilla Seafood of Hammond, 616 So.2d at 753.
Further, the law is clear that, although a tortfeasor takes his victim as he finds him, the tortfeasor cannot be held liable for injuries which are not attributable to the wrongful act. Sanders v. Collins, 551 So.2d 644, 651 (La.App. 1st Cir.1989), writ denied, 556 So.2d 1261 (La.1990). A fortiori, a tortfeasor's liability should not be diminished because an unrelated, fortuitous event, which may affect life expectancy, befalls a plaintiff.
Before a court of appeal can disturb an award made by a trial court, the record must clearly reveal that the trier of fact abused its much discretion in making the award. LSA-C.C. art. 2324.1; American Motorist Insurance Company v. American Rent-All, Inc., 579 So.2d at 433; Coco v. Winston Industries, Inc., 341 So.2d 332, 335 (La.1976); Callender v. Delchamps, Inc., 542 So.2d 140, 144 (La.App. 1st Cir.1989). The initial inquiry must always be directed at whether the trial court's award for the particular injuries and their effects upon this particular injured person *593 is a clear abuse of the trier of fact's much discretion. Reck v. Stevens, 373 So.2d 498, 501 (La.1979). Recently in Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994), the Louisiana Supreme Court noted that:
[T]he discretion vested in the trier of fact is "great," and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award.
In the instant case, the evidence presented at trial clearly established that the automobile accident aggravated a pre-existing seizure disorder for which future medical expenses, future pain and suffering, and future lost wages and impairment of earning capacity were awarded. Although the evidence also showed that Degruise had two unrelated cancers, the medical testimony presented showed that the cancers had been completely removed. The medical experts also testified that the chances of a 5-year cure rate vary from 30% and 40% and that 60% to 70% of the patients who suffer from the types of cancer Degruise had do not survive. However, the physicians also noted that there is no way to determine which patient will fall into which percentage category. Although the majority of the patients who are diagnosed with colon-rectal and liver cancer do not survive more than five years, the medical experts could not testify with a reasonable degree of medical certainty that Degruise would not live more than five years. Federated could not be held liable for the damages resulting from the cancers which were not related to the automobile accident, nor can their liability be diminished because Degruise subsequently developed a cancer which may diminish his life expectancy.
We have carefully reviewed the entire record in this matter and cannot say that the award for the particular injuries Degruise sustained as a result of the accident and the effects upon Degruise in particular is a clear abuse of the trier of fact's much discretion. The award is not, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances. Accordingly, the trial court did not abuse its discretion in its damage award.

PENALTIES AND ATTORNEY'S FEES
Federated contends that the trial court erred in awarding penalties and attorney's fees for Federated's failure to tender funds. Federated reasons that, given the relatively minor physical injury Degruise received in the automobile accident, the questions of causality of Degruise's seizure disorder, its payments as the worker's compensation carrier, and its reasonable reliance on certain medical opinions, it was not arbitrary or capricious in its failure to pay Degruise's UM claim within sixty days of receipt of satisfactory proof of loss.
Generally, a claimant for penalties and attorney's fees under the statute has the burden of proving that the insurer failed to pay the claim within sixty (60) days after receiving "satisfactory proof of loss" of the claim. McDill v. Utica Mutual Insurance Company, 475 So.2d 1085, 1089 (La.1985); Courmier-Trahan v. Service Cab Company, Inc., 546 So.2d 513, 517 (La.App. 4th Cir.), writ denied, 551 So.2d 1325 (La.1989). A "satisfactory proof of loss" is that which is sufficient to fully apprise the insurer of the insured's claim. McDill v. Utica Mutual Insurance Company, 475 So.2d at 1089; Courmier-Trahan v. Service Cab Company, Inc., 546 So.2d at 517.
Under McDill, the claimant is required to establish the following: (1) the owner or operator of the other vehicle involved in the accident was uninsured or underinsured; (2) the owner or operator of the other vehicle was at fault; (3) such fault gave rise to damages; and (4) the extent of those damages. McDill v. Utica Mutual Insurance Company, 475 So.2d at 1089; Bauer v. *594 White, 532 So.2d 506, 509 (La.App. 1st Cir. 1988).
It is well established that the trial court's conclusion with regard to assessment of penalties and attorney's fees under LSA-R.S. 22:658 is, in part, a factual determination; it should not be disturbed in the absence of a finding that it is manifestly erroneous. Bauer v. White, 532 So.2d at 509; Szwedt v. State Farm Mutual Automobile Insurance Company, 479 So.2d 453, 457 (La.App. 1st Cir.1985), writ denied, 483 So.2d 1022 (La. 1986). See Courmier-Trahan v. Service Cab Company, Inc., 546 So.2d at 517.
In the instant case, at a hearing on penalties and attorney's fees, the trial court was presented with documentary evidence, including medical records and reports, various depositions, and correspondence. The trial court, in oral reasons for judgment, noted that Degruise had been rear-ended by the tortfeasor, showing no fault on his part. Also, it was clear that the $25,000.00 of insurance available from the tortfeasor was insufficient to compensate Degruise for his damages. Moreover, it was undisputed that Degruise was injured as a result of the accident. The trial court noted that the blow to Degruise's head was sufficient to knock the glass in the rear window of his vehicle from its frame and that the medical experts related the aggravation of a prior seizure disorder to the head-injury sustained in the accident. The trial court also considered the policy defense urged by Federated, but noted that, with regard to the issue of UM limits, the trial court had already determined on the motion for summary judgment that the selection/rejection form was invalid and that limits of $1,000,000.00 were in effect. After reviewing the volumes of exhibits introduced at the hearing, the trial court determined that Federated failed to properly evaluate Degruise's claim. The trial court concluded that Federated had a duty to tender some $200,000.00 to $300,000.00 to Degruise and awarded penalties and attorney's fees for its failure to make a proper tender.
We have carefully reviewed the entire record in this matter under the appropriate standard of review and cannot say that the trial court was manifestly erroneous in finding that Federated was arbitrary and capricious in failing to make a proper tender to Degruise and in awarding penalties and attorney's fees for such failure to tender.

CONCLUSION
For the above reasons, the judgment of the trial court in favor of Degruise and against Federated is affirmed in its entirety. Federated is cast for all costs of these proceedings.
AFFIRMED.
SHORTESS, J., dissents with reasons.
SHORTESS, Judge, dissenting, in part.
In my opinion, the majority has erred in finding that Federated was arbitrary and capricious and in its treatment of the award for damages for future loss.

FINDING THAT FEDERATED WAS ARBITRARY AND CAPRICIOUS
After the trial court rejected Federated's policy defense and granted plaintiff's motion for summary judgment on coverage, this court rejected Federated's application for writs on the ground that it had an adequate remedy on appeal. I question, however, whether Federated actually had an adequate remedy on appeal in light of the majority's decision.
The majority affirms the trial court's finding that Federated was arbitrary and capricious because it failed to make a tender after losing on summary judgment. This holding is tantamount to a finding that uninsured motorist carriers have no right to a suspensive appeal. According to the majority, if an uninsured motorist carrier does not pay the plaintiff after losing in the trial court on summary judgment, it subjects itself to penalties and attorney fees if its legal argument fails on appeal. However, our jurisprudence has long held that where a serious defense is presented in good faith, assessment of attorney fees and statutory penalties against an insurer is inappropriate. Henton v. Walker & Wells Contractors, 25,821 (La.App. 2d Cir. 5/4/94), 637 So.2d 672, 677, writ denied, 94-1491 (La. 9/23/94), 642 So.2d 1295; Gardiner *595 v. Old Hickory Cas. Ins. Co., 529 So.2d 1324, 1328 (La.App. 5th Cir.1988); Kikendall v. American Progressive Ins. Co., 457 So.2d 53, 59 (La.App. 1st Cir.1984). In my opinion, the trial court committed manifest error in finding Federated was arbitrary and capricious because it chose to maintain its defense rather than making a tender after losing on summary judgment.

FUTURE DAMAGES
The majority's statement, without citation of authority, that a tort-feasor's liability should not be diminished because the plaintiff experiences "an unrelated, fortuitous event, which may affect life expectancy" flies in the face of Louisiana jurisprudence which has stood for at least ninety years. In Payne v. Georgetown Lumber Co., Ltd., 117 La. 983, 42 So. 475, 478 (1906), our supreme court held that where the plaintiff died before trial from causes unrelated to the accident sued upon, the substituted plaintiff could not use mortality tables to show the decedent's life expectancy because the calculation of damages could not extend beyond the date of death.
Subsequent Louisiana cases have recognized that events after the accident which affect the plaintiff's life expectancy should be taken into consideration in calculating awards for future losses. Payne was cited by Judge Tate, writing for the Third Circuit, in Dark v. Brinkman, 136 So.2d 463 (La.App. 3d Cir.1962).[1] Tate noted there is a general rule for damages such as loss of love and affection that the loss is determined by the conditions existing on the date of the tort. However, he quoted Corpus Juris Secundum for the rule on future damages, as follows: "In estimating future elements of damage, such as for mental and physical pain and suffering, medical expense and the like, plaintiff's condition as it exists after the injury and not as it was before the injury should be considered...." 136 So.2d 463, 469, quoting 25 C.J.S. Damages § 81 (emphasis added).[2]
In Smith v. Millers Mut. Ins. Co., 419 So.2d 59 (La.App. 2d Cir.), writ denied, 422 So.2d 155 (La.1982), the court noted with approval that the trial court expressly took into account the plaintiff's "obviously very poor" condition at the time of trial in calculating her award for future medical expenses. In Barks v. Magnolia Marine Transp. Co., 617 So.2d 192, 195 (La.App. 3d Cir.1993), the plaintiff was dying of lung cancer at the time of trial, and the defendant complained on appeal that plaintiff's shortened life expectancy was not taken into account in calculating damages for future losses. The court noted that the use of life expectancy tables is disfavored when the plaintiff's life span is adversely affected by disease. The trial court's decision was affirmed, however, because the defendant failed to put on medical evidence of plaintiff's shortened life expectancy and further failed to have its economist calculate loss of future wages based on a shortened life expectancy.
In this case, Federated presented evidence that, more probably than not, plaintiff's life expectancy was diminished by his cancer. In my opinion, use of plaintiff's life expectancy at the time of the accident, rather than his life expectancy at the time of trial, to calculate future elements of damages was legal error.
I agree with the majority opinion on all other issues.
I respectfully dissent in part.
NOTES
[1] In the original petition, Degruise named a fictitious insurer as the liability insurer of Houma Courier, and, by supplemental and amending petition, filed August 31, 1992, Liberty Mutual was named as a defendant.
[2] In a third supplemental and amending petition, petitioners named as a defendant the Louisiana Insurance Guaranty Association (LIGA), alleging that American is a member insurer and requesting that LIGA be held liable for all claims which could have been asserted against American, but for its liquidation. By judgment, dated February 4, 1994, the trial court determined that Degruise must first exhaust the available UM coverage before he can recover the excess from LIGA. Scott was also released from any and all liability.
[3] Federated filed a cross-claim against Scott, Houma Courier, and American for the full amount of any judgment rendered against it on the main demand.
[4] Thereafter, Federated filed a notice of intention to apply for supervisory and/or remedial writs of review. This court, on April 23, 1993, under docket number 93 CW 0503, denied Federated's writ application, noting that the criteria set forth in Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La. 1981) had not been met and that Federated had an adequate remedy by review on appeal after a final judgment on the merits.

Federated also filed a motion for devolutive appeal. On February 2, 1993, under docket number 93 CA 0114, this court issued a show cause order, directing the parties to show cause why the appeal should not be dismissed on the grounds that it was taken from a nonappealable, interlocutory judgment. On February 22, 1993, Federated filed a motion to dismiss its devolutive appeal.
[5] Farm Bureau filed a cross-claim against Scott, American, and Houma Courier for the full amount of any medical payments made to or on behalf of Degruise under its automobile liability insurance policy. By judgment of partial dismissal, dated March 19, 1993, petitioners dismissed their claims against Farm Bureau, reserving all rights against the remaining parties. In that same judgment of partial dismissal, Farm Bureau dismissed its claims against Scott and American.
[6] After this trial court ruling, Federated filed a notice of intention to apply for supervisory and/or remedial writs of review. On July 16, 1993, this court, under docket number 92 CW 2075, denied Federated's writ application, noting that the criteria set forth in Herlitz Construction Company, Inc. v. Hotel Investors of New Iberia, Inc., 396 So.2d 878 (La.1981) had not been met and that Federated had an adequate remedy by review on appeal after a final judgment on the merits.
[7] Pursuant to a motion to tax depositions and hospital records as costs, the trial court rendered judgment on August 9, 1994, in favor of Degruise and against Federated, casting Federated for the costs of various depositions and the expenses of various medical records.
[8] By Acts 1987, No. 436, effective September 1, 1987, LSA-R.S. 22:1406 D(1)(a) was again amended to change the requirements for the rejection of UM coverage or selection of lower UM limits as follows:

After the effective date of this Act, such rejection or selection of lower limits shall be made only on a form designed by each insurer. The form shall be provided by the insurer and signed by the named insured or his legal representative. The form signed by the named insured or his legal representative which initially rejects such coverage or selects lower limits shall be conclusively presumed to become a part of the policy or contract when issued and delivered, irrespective of whether physically attached thereto.
[9] We note that in 1989 when the minimum liability limits under the Motor Vehicle Safety Responsibility Law were increased, Federated issued an endorsement modifying the primary automobile insurance policy increasing the UM coverage limits to $20,000.00. Because of our determination that the initial selection/rejection form was invalid, it is unnecessary to determine whether the unilateral increase of these limits by the insurer in accordance with the statutory provisions required the execution of a new selection/rejection form.
[10] We also note that the Federated form does not contain an option to select UM coverage equal to the amount of liability coverage.
[1] Dark involved a plaintiff who died after trial. The ultimate holding was that the appellate court could not consider his death on appeal because the fact of his death was not part of the trial court record.
[2] That section of C.J.S. also notes that "if death results from a condition unconnected with the accident, death ends the period of damages, and where the injured person dies from other causes before judgment, the loss of earnings because of impaired earning capacity for the period of his life expectancy cannot enter into the award." (Footnotes omitted)